## CARTER OIL COMPANY v. GIBSON*
### (No. 1326; Dec. 8, 1925; 241 Pac. 219)

APPEAL & ERROR—MASTER & SERVANT—WORKMEN'S COMPENSATION LAW—PERMANENT TOTAL DISABILITY.

1. The appellate court will not disturb the finding of the trier of facts, if there is any substantial evidence to support it, notwithstanding the rule that, where two inferences may be drawn from the evidence of equal probability, then the party on whom rests the burden of proof must fail.

2. Total disability of employee, suing under Workmen's Compensation Act, should not be declared permanent, unless it clearly appears that affliction will not. yield to treatment, and that workman will not be able to again work at any gainful occupation.

3. In action by employee, whose finger was injured, requiring amputation, and subsequently he became nervously disorganized to such an extent that he was totally disabled to work, judgment declaring total disability permanent *held* sustained under evidence.

*See Headnotes (1) 4 C. J. p. 878 (2) Workmen's Compensation Acts, C. J. p. 94; (3) Workmen's Compensation Acts, C. J. p. 127.

ERROR to District Court, Natrona County; BRYANT S. CROMER, Judge.

Action by William M. Gibson under the Workmen's Compensation Law upon a claim of permanent total disability against the Carter Oil Company, employer. Judgment for claimant and defendant brings error.

*Nichols & Stirrett* for plaintiff in error.

The burden of proof is upon the workmen to establish permanent total disability resulting from the accident; Inter. Harvester Co. vs. Com. (Wis.) 147 N. W. 53; Spring Canon Coal Co. vs. Industrial Co. (Utah) 201 Pac. 173; Hills vs. Blair (Mich.) 148 N. W. 244; in re Sponatski (Mass) 108 N. E. 466; inferences may not be built upon inference; Ginsburg vs. Co. (Mich.) 170 N. W. 15.

*Robert R. Rose* for defendant in error.

The evidence clearly established permanent total disability resulting from the accident; where there is substantial evidence to support the findings of the trial court, it will not be disturbed; Standard Oil Co. of Ind. vs. Sullivan; (Wyo.) 237 Pac. 253; the evidence in the present case upon which the findings of the trial court were made was of a substantial character, and the order of award should be sustained.

BLUME, Justice:

The District Court rendered judgment herein, making an allowance to William M. Gibson under the Workmen's Compensation Act for permanent total-disability, and his employer, the Carter Oil Company, has brought proceedings in error in this court, alleging, in substance, that the judgment is not supported by the evidence, contending that the allowance should have been for temporary total-disability, rather than for permanent total-disability.

William M. Gibson, hereinafter referred to as the workman, is forty-eight years old. The evidence shows that prior to the time of his injury he was a man in good health. On July 28, 1924, while in the employ of the Carter Oil Company and while engaged in laying an eight inch pipe line, the "back-up tongs," that is to say, the tongs used in holding the pipe in place, slipped, catching the third finger of his right hand, crushing it, so that about five days later it became necessary to amputate it. An injury to one of the feet also resulted as part of the accident, though the main injury was that to the finger. Shortly subsequent to the amputation, an infection set in, spreading through the hand, and partially, at least, affecting the wrist, although the wound to the finger seems to have been fairly well healed over within a comparatively short time after the amputation. On September 28, 1924, the workman came under the charge of Doctor Morad, who testified that at that time Gibson showed some

signs of nervousness, although the infection had cleared up considerably by that time and that the tissues looked healthy. In the latter part of November, 1924, the workman performed some labor, for three days, driving a team for grading contractors. Aside from that he has not performed any work since the date of the accident. In December, 1924, Doctor Morad advised his patient to visit with his folks in the East, partially at least for the purpose of obtaining relief, if possible, from his nervous condition. The workman, accordingly, went to Illinois about the middle of December and came back a month later in no better condition than when he had left. Doctor Morad then informed his patient that he was unable to give him further relief and advised him to consult Doctor Johnson, of Casper. This was done, and the workman came under that doctor's charge about January 17, 1925, and remained in his charge up to the time of the trial. Doctor Johnson testified that on January 17, 1925, he made an examination of the workman, which showed him to be afflicted with neurosis; that there was a general tremor of the body; that the muscles were soft and flabby; that the general appearance was one of following a profound shock or concussion; that the eyes were bad and bloodshot; that the tongue was furred and coated; that the heart action was rapid and the reflexes exaggerated; that the workman complained of tenderness over the right arm; that the hand was swollen; that there was swelling on the right side of the spine in the lower dorsal region and upper lumbar region and on the left side of the spine in the lumbar region; that the blood pressure was high; the skin dry, hard and inclined to be scaley. He further testified that the patient gradually declined in health; that his neurosis was of extreme character, and similar to paralysis agitans; that this condition was due to the injury, the shock therefrom and the infection subsequent thereto; that it was absolutely permanent; that the work-

man would not recover and would never be able to work at a gainful occupation. Several months prior to the trial herein, this witness wrote to the chief physician of the plaintiff in error, in making a report of the workman's condition: ''I am of opinion that this man will never recover but I think the danger of his dying is remote. I do not believe he will ever be able to hold a position with a company as long as he lives. I think about the extent of his ability to work in the future would be to help around a little with errands in and about the house and perhaps a little on the farm.'' Similar evidence as to the permanency of the disability of the workman and as to the cause of his condition was given by Doctor Kimball. The workman was a witness in the case and the trial court accordingly had the advantage of observing his condition at that time. Judging from the expressions in the record, the workman manifested an extreme affliction of neurosis while on the witness stand, and several witnesses, evidently disinterested, testified that his condition for a number of months prior to the time of the trial was very similar to that shown by him in the court room. The workman himself testified that he had no appetite; that he almost constantly had severe pains; that he frequently was unable to turn over while in bed; that much of the time he was not able to be up; that he was extremely nervous, which condition commenced about October, 1924; that he was unable to do any work and could, generally, not even go down town unless accompanied by some one. These facts were corroborated by his wife and by other testimony. Even Doctor Cotton, a witness for the plaintiff in error, while stating it as his opinion that the workman's condition was not permanent, admitted that he was then disabled to the extent of 75 per cent; that if his pains, manifested by him while on the witness stand, were real, he would be unable to perform any work; that neurosis logically followed the injury of the workman and the

shock therefrom and the subsequent infection; and that the probability of improvement in the workman's condition was conjectural. He further testified that the workman would continue to be permanently disabled to the extent of 62½ per cent, although in another place he states that percentage to be from 37½ to 40. So, too, Doctor Morad, a witness for the plaintiff in error, admitted that, not considering infected tonsils and gums, hereinafter referred to, the workman's condition was due to the injury which he received in July, 1924; that from the looks of the workman, he was affected by extreme neurosis and was not able to do anything. In fact it is freely admitted here that the workman was, at the time of the trial, totally disabled for the time being. The main witness for plaintiff in error, who unqualifiedly stated that the condition of the workman was not solely due to the injury in July, 1924, was Doctor Dacken, who expressed it as his opinion that the infected gums and tonsils of the workman, together with said injury, the subsequent infection and the pending litigation, were the cause thereof and that the workman could probably be cured. Doctor Cotton had examined the tonsils and teeth of the workman in April, 1925, and made a report to the plaintiff in error to the effect that the workman was affected with neurosis, but made no recommendation that anything should be done with reference to the teeth and tonsils. Doctor Morad testified that everybody's tonsils are infected to a more or less extent. Gibson himself testified that he had no trouble whatever with his tonsils prior to the accident and no trouble with his teeth, except those which he caused to be pulled. Doctor Johnson testified that the infection of the workman's gums and tonsils was not severe enough to cause neurosis. The evidence shows that neurosis is a progressive disease; that it may be caused by any sort of infection and certain drugs, and that litigation and worry is apt to make it worse. Some of the testimony

is to the effect that it usually shows up, if at all, within a comparatively short time after an injury. And Doctor Morad testified that in his opinion there was not sufficient infection in the hand, after it had cleared up, sometime after he commenced to treat the workman, to cause neurosis. It was, however, agreed by all that the workman was, at the time of the trial, afflicted with an extreme case of neurosis.

The foregoing is a general summary of what we conceive to be the testimony in the case. It would subserve no good purpose to set it out in greater detail. Counsel for plaintiff in error insist that from the evidence in the case two inferences could equally be drawn, both as to the cause of the injury and as to the cause of the subsequent condition of the workman; that the inference is just as strong that his condition is due, at least partially, to the infection of his tonsils and teeth, as that it is due solely to the injury in question; and that the inference is just as strong that the total disability of the workman is only temporary, as that it is permanent; that the trial court, accordingly, had no right to draw one inference rather than another. We are referred to the case of Spring Canyon Coal Company v. Industrial Commission, 58 Utah 608, 201 Pac. 173, where the court said that where two different inferences may be deduced, one of which authorizes the award and the other not, and both inferences are equally reasonable, the inferences meet and destroy each other, neither has any probative force, and one cannot be arbitrarily chosen in preference of the other. The same thought is expressed in another portion of the opinion, where it is said that if the evidence is merely such that the probabilities are equal, then the fact is not established, and the party upon whom rests the burden of proof— which in the case at bar is conceded to be on the workman —must fail. So it is said in Ginsberg v. Adding Machine Company, 204 Mich. 130, 170 N. W. 15, citing cases, that

if there are two or more inferences equally consistent with the facts, the applicant must fail. What is meant by the rule is pretty clearly indicated by the opinion in the case of In re Sponatski, 220 Mass. 526, 108 N. E. 466, L. R. A. 1916 A. 333, where the court, considering that rule, said:

"The burden too of proving the essential facts necessary to establish a case warranting the payment of compensation rests upon the dependents in a case arising under the Workmen's Compensation Act as much as it does upon a plaintiff in any proceeding at law. The dependents must go further than simply to show a state of facts which is as equally consistent with no right to compensation as it is with such right. They can no more prevail if factors necessary to support the claim are left to surmise, conjecture, guess or speculation, than can a plaintiff in the ordinary action in tort or contract. A sure foundation must be laid by a preponderance of evidence in support of the claim, before the dependents can succeed. * * * It only means, if there is no evidence in his favor upon which a reasonable man can act, he will fail. If the evidence, though slight, is yet sufficient to make a reasonable man conclude in his favor on the vital points, then his case is proved. But the rational mind must not be left in such uncertainty that these essential elements are not removed from the realm of fancy."

We agree, in the main, with the rule as thus stated. If the conclusion that the total disability of the workman is permanent, is in the "realm of fancy," the judgment herein cannot stand. But is it? Is there, in fact, any reasonable basis for such contention? We are unable to see that there is. Conceding it to be true, which under the evidence we consider somewhat doubtful, that the trial court might have drawn the inferences contended for by plaintiff in error, surely there is an abundance of evidence, warranting it to draw the opposite conclusion. The fore-

going rule does not, as shown by the cases cited, forbid the court to prefer one conclusion to another, if based upon substantial evidence. As we stated in Standard Oil Company v. Sullivan, (Wyo.) 237 Pac. 253, the evidence in nearly all the cases involving issues of fact, will warrant different inferences, and when the trier of fact has made his finding, the appellate court will not disturb it, if there is any substantial evidence to support it. See also Wilson v. Furniture Company, 201 Mich. 531, 167 N. W. 839. It would be a strange rule that a court could not arrive at one conclusion rather than another, simply because there is some evidence in the record which might support either one of two conclusions. We conceive it to be the duty of the court, on the contrary, to draw whatever conclusion the evidence requires. We stated, it is true, in the Sullivan case, that total disability should not be declared to be permanent, unless it appears pretty clearly that the affliction will not yield to treatment and that the workman will not be able to work at any gainful occupation. That rule, we think, is sound, was laid down for the guidance of the trial court, and should be followed in all cases of this character. But that rule is not inconsistent with the rule that where the judgment is supported by substantial evidence, it will not be disturbed by this court, although we should scrutinize the evidence in cases of this character closely to determine whether or not the trial court was justified in declaring the injury to be permanent. We find in the case at bar, after carefully considering the evidence, no justification for disturbing the finding made by the trial court.

The judgment below must accordingly be affirmed and it is so ordered.

*Affirmed.*

POTTER, C. J., and KIMBALL, J., concur.