Frank CARDIN, Appellant
(Plaintiff-employee),

v.

MORRISON–KNUDSEN, Appellee
(Defendant-employer).

No. 5064.

Supreme Court of Wyoming.

Nov. 30, 1979.

Frank L. Thomas, Jr., Kemmerer, for appellant.

V. Anthony Vehar, Kemmerer, for appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROSE, Justice.

This appeal arises under the Wyoming Worker's Compensation Act, §§ 27–12–101 to 27–12–804, W.S.1977, which finds worker Frank Cardin making a disputed claim for injury against his employer, Morrison-Knudsen. At the hearing, the court found a compensable injury had occurred and, by order dated October 5, 1978, determined Mr. Cardin to have suffered "less than 5% permanent total disability" and awarded him $1,499.00. We remanded because a doctor's report was not of record and, after settlement of the record, the judge adopted and affirmed the order of October 5, 1978. The worker appealed.

The court found that the employee was injured when he was working for employer-Morrison-Knudsen as a warehouseman at a time when he was acting within the scope of his employment and this finding is not in dispute here. After surgery on both of the worker's knees, Dr. Carson, who attended Cardin, wrote a letter in which he said the worker was

"permanently disabled from working as a warehouseman which requires lifting and climbing."

He did not assign a percentage of permanent total disability to the injury of the worker. This letter was made a part of the record through the defendant's deposition.

A Dr. Morrow, whose letter was also admitted for the record, examined the worker and wrote:

"At the present time, I feel that he does have a ten percent (10%) permanent partial disability of each knee. . . ."

In response to a remand order of this court for purposes of settling the record, the employer's doctor, H. William Mott, answered interrogatories in which he relates finding no permanent partial disability to the worker, Cardin. When asked,

"Has Mr. Cardin suffered a permanent loss of function or use of either or both knees?"

his answer was

"No."

The state of the record with respect to permanent partial disability, as it finally comes to us, is that one doctor testified that the worker had suffered a 10% permanent partial disability of each knee and the other doctor represented that he had zero disability of the knees. There is no other evidence in the record which recites a percentage of permanent partial disability.

There is other testimony with respect to the worker's ability to perform his "duties as a warehouseman," which is relevant to one of the issues raised by this appeal. The record indicates that Mr. Cardin is capable of doing only manual labor. Dr. Carson testified that the appellant is "permanently disabled from working as a warehouseman which requires climbing and lifting," and recommended that Mr. Cardin engage only in sedentary or clerical work which would not aggravate his condition. The worker contends that he is unqualified to perform clerical or sedentary work and, in any case, Morrison-Knudsen had not offered him such employment.

There are two issues for our consideration presented by this appeal:

*First.* Has the worker been rendered permanently totally disabled?

*Second.* If not, does the evidence support the court's award of less than 5% permanent total disability, in the sum of $1,499.00?

### Permanent Total Disability

It is the theory of the appellant, under § 27–12–405(a), W.S.1977, that his injury resulted in permanent total disability. The subsection of the statute provides:

"(a) Permanent total disability means the loss of both legs or both arms, total loss of eyesight, paralysis *or other conditions permanently incapacitating the employee from performing any work at any gainful occupation for which he is reason-ably suited by experience or training.*" [Emphasis supplied]

It is the theory of the worker that the italicized language means—in his case under the condition of this record—that he is entitled to be declared permanently totally disabled. He comes by this theory, in large part, by reason of his understanding of our holding in *In re Iles,* 56 Wyo. 443, 110 P.2d 826 (1941).

We said in *In re Iles* that, except for the disabilities enumerated in the statute (§ 27–12–405(a)), an award for permanent total disability should not be made unless it " '. . . appears pretty clearly that the affliction will not yield to treatment, *and* that the workman will never be able to work at "any gainful occupation." ' " [Emphasis supplied] 110 P.2d at 829.

See, also, *Standard Oil Company v. Sullivan,* 33 Wyo. 223, 237 P. 253 (1925).

The question is: According to the testimony available to the court, was there sufficient evidence to decide that the affliction will yield to treatment *and* the workman will be able to work at a gainful occupation? The appellate rule which guides us is that we must consider the evidence most favorable to the prevailing party and every inference which we can give to it, and, if this evidence with its attendant inference is sufficient to sustain the judgment, we will not disturb the decision of the trier-of-fact. *Berry Refining Company v. Pinsky,* Wyo., 443 P.2d 521, 523 (1968). See, also, *Johnson v. State,* Wyo., 562 P.2d 1294, 1297 (1977), quoting from *Blakely v. State,* Wyo., 542 P.2d 857, 863 (1975), and *Harris v. State,* Wyo., 487 P.2d 800, 801 (1971), and citing, in further support, *Bentley v. State,* Wyo., 502 P.2d 203, 208 (1972).

It is, of course, the burden of the worker to prove that he is so handicapped that he is not capable of employment in any well-known branch of the labor market before the "odd-lot doctrine" of *Iles* will be applicable. The "odd-lot doctrine" is described in 2 Larson, Law of Workmen's Compensation, § 57.51 at p. 10–109 (1976), as providing that permanent total disability

"may be found in the case of workers who, while not altogether incapacitated

for work, are so handicapped that they will not be employed regularly in any well known branch of the ·labor market."

In adopting this concept in *In re Iles,* supra, we said:

" . . . '[W]here it is found that the employee is permanently and totally disabled so far as hard or manual work is concerned, but that he might do light work of a special nature not generally available, the burden is on the employer to show that such special work is available to the employee.' . . ." 110 P.2d at 829.

█ Before the burden of which *In re Iles,,* supra, speaks shifts to the employer, the employee must prove that he or she is so disabled that he or she will not be capable of employment in any well-known branch of· the labor market. Since the evidence in this case is that Cardin is capable of light or sedentary work, we think the court below was justified in holding that the facts do not serve to make the "odd-lot doctrine" available to this worker and the .court was, therefore, justified in finding the worker to not be permanently totally disabled.

Dr. Carson's letter said:

"It is my opinion that this man is permanently disabled from working as a warehouseman, which requires lifting and climbing. His condition, despite surgery to both knees, will not improve sufficiently to allow this type of activity."

This is not to say that the appellant is permanently totally disabled for doing all hard manual work.

Dr. Carson said in his deposition:

"By no stretch of my imagination could I conclude this man permanently totally disabled."

At another place he said:

"There are thousands and thousands of occupations he could perform."

The safety engineer for Morrison-Knudsen testified with respect to the jobs suitable for the worker, given the restriction on activity and movement enunciated by Dr. Carson:

"A. The jobs that require, speaking of infirmities, the least amount of bending, stooping, lifting, walking up and down stairs, probably would be someone like the steam cleaner operator, toolroom attendant, engineering aid, anyone [sic] of the clerks, maintenance clerks, clerk payroll, shift engineer would probably be the least amount of those particular types of things. Education-wise, none of those jobs need to have a major amount of education to do any of them.

"Q. Mr. Kilstrom, are all of these jobs in approximately the same pay classification as Mr. Cardin's job was with Morrison-Knudsen?

"A. Except for a couple of clerks were lower, all of them are in a basic range of $9 an hour or more and some $8 and one in there is 5, but basically, they are in the same pay rate—not pay rate. That pay rate is based on a day shift differential."

Dr. Mott, testifying for the company, said:

"In my opinion, I think this man could do anything that he really wanted to do, if he wanted to do it."

Dr. Mott went on to say in his deposition:

"I think, in actuality, this man could probably do anything that he had the right mental set to and really wanted to do."

We see no purpose in going further. There may be evidence in conflict on this point [1], but we are obliged to uphold the ·trial court where there is substantial evidence supporting the court's judgment.

1. Where a similar conflict arose in *Fowler v. Continental Oil Co.,* 43 Wyo. 410, 4 P.2d 1092 (1931), also a worker's compensation case, we said:

" . . . As many times previously intimated by this court, where the testimony is conflicting but there is substantial evidence to support the findings of the trial court, we will not undertake to review the entire evidence in the case and substitute our own judgment thereon for that of the lower tribu-. nal, possessed as that court is of the superior advantage of seeing and hearing all the witnesses. *Huber v. Bank,* 32 Wyo. 357, 231 P.

See, *In re Corey*, 65 Wyo. 301, 200 P.2d 333 (1948). On the question of permanent total disability, we find there to be more than adequate evidence to support the trial court's holding on this issue.

### Permanent Partial Disability

In the original order of the district court, the worker was awarded a sum which came to $1.00 less than 5% of the permanent total disability allowance of $30,000.00 or $1,499.00. The only competent testimony of permanent partial disability upon which this award could have been made was offered by Dr. Mott in a report dated July 31, 1978, in which he said:

> "At most, if a disability is to be assigned, I would say it is less than 5% at this time,"

and the letter of Dr. Morrow, which said:

> "At the present time I feel that he does have ten percent partial disability of each knee."

This court remanded for settlement of the record because Dr. Mott's report or letter of July 31, 1978, was not made a part of the record, although Dr. Morrow's letter was an admitted exhibit. Dr. Mott's letter (report) of July 31, 1978, is still not a part of the record.

Upon remand, various interrogatories were submitted to Dr. Mott and, as has been noted before, he responded to questions bearing upon the permanent-partial-disability aspect of the inquiry by stating that, in his opinion, the worker had suffered no permanent loss or function of either or both knees.

█ In a document entitled "PROCEEDINGS ON REMAND" the judge "adopts and affirms the order of October 5, 1978, nunc pro tunc," the effect of which is to reaffirm the judgment awarding the worker $1,499.00. The appellant asserts that there is no evidence to support this award. This may be true—too bad the appellant's

63, 234 P. 31; *Christensen v. McCann*, 41 Wyo. 101, 282 P. 1061. And this rule has been repeatedly applied to Workmen's Compensation Act cases. *McMahon v. Midwest Refining Co.*, 36 Wyo. 90, 252 P. 1027; *Stan-*

brief cited not one single authority for this position, nor did it make any cogent argument in its behalf.

Where a party fails to cite authority or cogent argument supporting its claim on appeal, the supreme court is not obliged to consider the party's claim. *Peterson v. First National Bank of Lander*, Wyo., 579 P.2d 1038, 1040 (1978); and *Rissler & McMurry Co. v. Atlantic Richfield Co.*, Wyo., 559 P.2d 25, 30 (1977).

Affirmed.

*dard Oil Co. v. Sullivan*, 33 Wyo. 223, 237 P. 253; *Kittleson v. Hibler*, 37 Wyo. 332, 261 P. 648; *Carter Oil Co. v. Gibson*, 34 Wyo. 53, 241 P. 219." 4 P.2d at 1093–1094.