Leonard **LEBSACK**, Appellant (Employee-Claimant),

v.

**TOWN OF TORRINGTON**, Appellee (Employer-Defendant),

v.

The **STATE** of Wyoming, ex rel., **WYOMING WORKER'S COMPENSATION DIVISION**, Appellee (Objector-Defendant).

No. 84–109.

Supreme Court of Wyoming.

April 25, 1985.

Robert T. Moxley, Wheatland, for appellant.

Michael A. Blonigen, Asst. Atty. Gen., argued, for appellees; A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., Terry J. Harris, Asst. Atty. Gen., and Stephen H. Graham, Atty. for Town of Torrington, on brief.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

ROONEY, Justice.

This is an appeal in a worker's compensation case from the district court order awarding 25 percent permanent partial disability for injury to appellant's back, and denying any compensation for an alleged injury to appellant's knee. Appellant raises the following issues:

"I. THE TRIAL COURT ERRED IN FAILING TO AWARD 100% PERMANENT TOTAL DISABILITY.

"II. THE TRIAL COURT IMPROPERLY DENIED MEDICAL TREATMENT AND OTHER BENEFITS TO WHICH APPELLANT IS ENTITLED BY REASON OF HIS KNEE INJURY.

"III. THE [TRIAL] COURT ASSIGNED AN INCORRECT DATE TO THE APPELLANT'S DISABILITY.

"IV. THE AWARD OF ATTORNEY'S FEES WAS INADEQUATE AND UNREASONABLE.

"V. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO SPECIFICALLY ADDRESS 'POST-TRAUMATIC NERVOUS INSTABILITY' IN ITS FINDINGS OF FACT AND CONCLUSIONS OF LAW."

We affirm.

Appellant, while an employee of the Town of Torrington, fell from a loader in September of 1978. He continued working for a time, but eventually filed a report of the accident on June 27, 1979 and was awarded worker's compensation. He alleged knee and back injuries, but compensation for the alleged knee injury was denied early in the procedural history of the case. Appellant returned to work in the summer of 1979, but then again quit in September of 1980. He then underwent two back operations. On December 16, 1983, appellant filed an Addendum to Petition for Relief, requesting an award of 100 percent permanent total disability. The matter went to trial on January 4, 1984. The trial court denied the claim for knee injury and awarded a 25 percent permanent partial disability for back injury.

I.

Appellant contends that the trial court erred in failing to award 100 percent permanent total disability. Permanent total disability is defined in § 27–12–405(a), W.S. 1977, as follows:

"(a) Permanent total disability means the loss of both legs or both arms, total loss of eyesight, paralysis or other conditions permanently incapacitating the employee from performing any work at any gainful occupation for which he is reasonably suited by experience or training."

Permanent partial disability is defined in § 27–12–403(a) and (h), W.S.1977, as follows:

"(a) Permanent partial disability means the loss or permanent impairment of a limb or sense, or any other injury known to surgery or medicine to constitute permanent impairment of a bodily function.

\* \* \* \* \* \*

"(h) For any other injury known to surgery or medicine to constitute permanent partial disability, the employee shall receive compensation in the amount proportional to the extent of permanent partial disability based as near as may be upon the foregoing schedule. One (1) factor to be considered is the ability of the employee to continue to perform work for which he was reasonably suited by experience or training prior to the injury."

▆▆▆ In finding a 25 percent permanent partial disability the trial court made findings of fact and conclusions of law. On appeal, we presume the findings of fact to be correct, and we will not disturb them absent a finding that they are clearly erroneous or contrary to the great weight of the evidence. *Rocky Mountain Turbines, Inc. v. The 660 Syndicate, Inc.*, Wyo., 623 P.2d 758 (1981). Also, we will not overturn or modify the lower court's finding of disability if there is substantial evidence to support such finding. *Schepanovich v. United States Steel Corporation*, Wyo., 669 P.2d 522 (1983); *State ex rel. Wyoming Worker's Compensation v. Colvin*, Wyo., 681 P.2d 269 (1984). If there is substantial evidence to support the factual determination made by the trial court, this court, on appeal, will not invade the province of the trier of fact by reaching a different conclusion. *Schepanovich v. United States Steel Corporation*, supra; *Matter of Creek*, Wyo., 657 P.2d 353 (1983); *Mor, Inc. v. Haverlock*, Wyo., 566 P.2d 219 (1977); *Rocky Mountain Tank and Steel Company v. Rager*, Wyo., 423 P.2d 645 (1967).

▆▆▆ Appellant contends that he sustained his burden of proof for an award of 100 percent permanent total disability under the "odd-lot doctrine." This doctrine was adopted by this court in *In re Iles*, 56 Wyo. 443, 110 P.2d 826 (1941), and has been discussed in several more recent cases. The district court, in its conclusions of law, summarized the doctrine as follows:

"6. In cases such as this one, where a claim is for permanent total disability, the Wyoming Supreme Court has adopted the 'odd-lot doctrine'. *Schepanovich v. United States Steel Corporation*, Wyo., 669 P.2d 522, 525 (1983), citing *Cardin v. Morrison-Knudsen*, Wyo., 603 P.2d 862 (1979).

"7. The 'odd-lot doctrine' provides that a permanent total disability may be found in the case of a worker who, while not altogether incapacitated for work, is so disabled that he or she will not be regularly employable in any well-known branch of the labor market. *Cardin v. Morrison-Knudsen*, Wyo., 603 P.2d 862, 863–864 (1979).

"8. The burden of proof initially is assigned to the injured worker to show that he is incapacitated from performing any work at any gainful occupation for which he is reasonably suited by experience or training; that is, he is so disabled that the services which he is reasonably equipped to perform by prior experience or training are rendered nonmarketable in all well-known branches of the labor market in the community so as to provide a steady and continuous source of income rather than sporadic or intermittent employment. *Schepanovich v. United States Steel Corporation*, Wyo., 669 P.2d 522, 528 (1983), citing 2 Larson, Workmen's Compensation Law, Section 57.51 (1982).

"9. The burden is also upon the injured worker to show efforts to obtain suitable employment which are reasonable under the circumstances. *Schepanovich v. United States Steel Corporation*, Wyo., 669 P.2d 522, 530 (1983).

"10. Should these showings be made, the burden is then shifted to the employer to show that light work of a special nature not generally available which could be performed by the injured worker, is in fact available. *In re Iles*, 56 Wyo. 443, 452, 110 P.2d 826 (1941).

"11. The claimant in this matter failed to meet his burden of proof sufficiently to shift the burden of proof to the employer under the 'odd-lot doctrine'.

"12. Specifically, substantial evidence and testimony was presented tending to establish that claimant is presently employable as a janitor, small parts delivery person, as well as various other well-known and generally available branches of the labor market in the Torrington area.

"13. Additionally, claimant has failed in his burden to show reasonable efforts to obtain suitable employment; specifically, even claimant testified that he has made no efforts whatsoever to find work since September of 1980."

This is a correct statement of the law concerning the "odd-lot doctrine."

█ Appellant testified that he had not looked for a job since September of 1980. He testified, "Well, I can't work in my condition. How am I going to work in my condition?" He argues that:

"The trial court, probably relying on the Schepanovich case, seems to have blindly applied the rule that unless the Employee-Claimant has unsuccessfully searched for work, he cannot establish a prima facie case of unemployability. But just as there are many ways to skin a cat, there must necessarily be many factual scenarios wherein a person who has not sought work may nonetheless be deemed to be unemployable."

While this may be true, this case is not one of those scenarios. Appellant did testify that he cannot perform the intellectual tasks required of most sedentary jobs. However, he also testified that he had worked in the past at various jobs, including common labor, farming, janitorial work, small auto parts delivery, street cleaning and truck driving. Dr. Grizzle testified at trial that appellant's disability would not stop him from doing sedentary or other types of work that would not require a lot of bending or lifting or crawling under objects of machinery. Dr. Grizzle further testified:

"A. Well, I would think that if he didn't have a lot of heavy lifting to do he might be able to do janitorial work in the school, for instance.

"Q. Any other examples?

"A. Oh, maybe certain types of handiman [sic] work if he didn't have to crawl under, well, for instance, if he didn't have to crawl under a sink, for instance, to fix it. I think he could do it, but over a long period of time that might be difficult for him.

"Q. Doctor, how about, provided he didn't have to travel for extended periods of time or over very long distances, could he deliver small parts by driving a pick-up?

"A. Oh, yes. If he has driven down 76 miles to my office, well, then he could drive and deliver packages around town."

In addition, there was testimony from the office manager for the Torrington Job Service-Employment Security Commission, State of Wyoming, that there were many jobs generally available in the Torrington area for which appellant would be educationally qualified. In light of this testimony, we hold that appellant did not present a prima facie case to shift the burden of proof to appellee under the "odd-lot doctrine."

Several doctors testified at trial, some through depositions, as to the amount of appellant's disability. Dr. Grizzle testified that appellant suffered from between 20 and 25 percent disability of the body as a whole. Dr. Preston testified that appellant carries no more than a 25 percent permanent partial disability of the lower back, which would convert to a 5 percent total body disability.

█ Inasmuch as appellant failed to bring himself within the "odd-lot doctrine" and in light of the above-referenced testimony, we cannot say that the trial court erred in failing to award 100 percent permanent total disability.

Appellant raises as a separate issue, but also argues under this issue, that the trial

court erred in failing to specifically address "post-traumatic nervous instability" in its findings of fact and conclusions of law, and that the court failed to recognize the existence or compensability of post-traumatic nervous instability.

The trial court did include in its findings of fact:

"14. Claimant is presently and since August 6, 1981, has been suffering from a permanent partial disability of 25 percent of the body as a whole, relating to his back injury of September 24, 1978."

In its conclusions of law the trial court included the following:

"18. Rather, claimant's September 24, 1978, accident has resulted in a 25 percent permanent partial disability as that term is defined in Section 27–12–403(h), Wyoming Statutes 1977, and that this condition has existed since as early as August 6, 1981."

 Appellant's contention that the findings of fact and conclusions of law are not complete is not well taken. We have stated that a request for findings under Rule 52(a), W.R.C.P., is not in the nature of a request for answers to special interrogatories directed to the court. The request is only for findings which are sufficient to indicate the basis or steps taken for the decision "upon the contested matters," *Cline v. Sawyer*, Wyo., 600 P.2d 725, 730 (1979), and that the requested findings need not be set forth in elaborate detail but need only be clear, specific and complete in concise language informing the appellate court of the underlying basis for the trial court's decision. They are an aid to the appellate court on appeal affording it a clearer understanding of the trial court's decision. *Whitefoot v. Hanover Insurance Company*, Wyo., 561 P.2d 717, 720 (1977).

Dr. Grizzle testified concerning the post-traumatic nervous instability, and he then said:

"Q. And you will on that basis, then— or you have rated Leonard Lebsack at a 25 percent disability; is that not true?

"A. Yes.

"Q. And does that take into account his entire physical condition and all of your knowledge of the man's physical condition?

"A. Yes."

 It is thus clear on the record that the trial court had the testimony of Dr. Grizzle, who, accounting for the post-traumatic nervous instability, testified to a 25 percent disability when it made its finding of a 25 percent permanent partial disability. Obviously this includes the post-traumatic nervous instability.

II.

Appellant's next contention relates to his knee condition. The testimony at trial was uncontradicted that appellant's present knee condition is a result of an injury sustained in 1964 while appellant was employed by Holly Sugar. The injury in 1964 had previously resulted in a worker's compensation claim and surgery.

Dr. Preston testified as follows:

"Q. * * * Okay. This osteoarthritic, if I got it right, this osteoarthritic knee process, is this a disease or is this something that's brought on or that occurs in an instant with an injury like a broken leg?

"A. No, I felt that this was the end result of his knee problem dating back to 1964.

"Q. Okay. So this is something that started in motion in '64 and had developed to the point you were viewing it at in 1978?

"A. It had developed to that point when I saw him in 1979.

"Q. Excuse me?

"A. I did not feel that it was in any way related to his injury of September 1978.

* * * * * *

"Q. I see.

"Getting to Leonard's knee condition, is that just a pure case of arthritis?

"A. His knee condition was a very clear cut standard, routine, normal response to an injury that resulted in a torn cartilage. We see this very commonly. I.

saw no reason not to feel that that injury was not related to the injury back in the sixties when he was working for Holly Sugar. And I could see nothing that would cause that injury to be related to the injury of 1978."

Dr. Preston was the physician who had originally seen appellant for the knee injury in 1964 and so was in the best position to determine if the present state of appellant's knees was due to the 1964 or the 1978 incident. His testimony was not substantially refuted. Dr. Gasser, an orthopedic surgeon, saw appellant specifically for evaluation of appellant's knee. He testified:

"Q. Would Mr. Lebsack's condition as you diagnosed it, would it be a condition that occurs over a substantial period of time?

"A. These conditions can occur over a period of time merely from the wear and tear of everyday work and use or they can be secondary to an acute traumatic episode.

"And that sets the stage for it. And it later develops over a period of time. And I don't know of any way other than the history as given by the patient to tell one from the other.

"Q. Okay. Based upon the history given by Mr. Lebsack, do you have an opinion as to which one of the situations we're dealing with here?

"A. Mr. Lebsack states that he was doing well until he slipped and fell in 1978 and since then he's had pain in his knees. So based upon that history, I would say that probably the arthritis is related to that or at least was aggravated by that. But that is the only thing that I have to really connect the two.

\* \* \* \* \* \*

"In other words, what is happening to his knees is that they're wearing out and we commonly see this with older people. Joints just weren't designed to really last as long as what they do any more. And they're wearing out. And it takes a sig-

nificant period of time for those changes to develop."

The trial court found:

"6. In addition to his 1978 injury to his back, claimant suffered an injury to his right knee in 1964 while working for Holly Sugar Corporation, requiring surgery to be performed by Paul J. Preston, M.D.

"7. Presently, claimant's 1964 knee injury and resulting surgery, coupled with his age and the general wear and tear which occurs both at work and away from work, has caused claimant's knees to develop an osteoarthritic condition. After claimant's 1964 knee injury at Holly Sugar Corporation, he worked for Holly Sugar Corporation during each year's sugar beet campaign for over ten (10) years; and after his September 24, 1978, injury, he worked for the Town of Torrington from November, 1979, to approximately October 15, 1980.

\* \* \* \* \* \*

"15. Claimant is presently suffering from a five percent (5%) permanent partial disability of each leg above the knee, relating to his knee injury of 1964, coupled with the general wear and tear of work and everyday activities away from work, occasioned since 1964.

\* \* \* \* \* \*

"14. Claimant's impairment to his knees is not causally related to the September 24, 1978, accident, but rather is a result of the 1964 injury, resulting surgery, and long-term wear and tear.

"15. As a result, claimant's motion for appointment of another physician to treat his knee condition should be and is hereby denied."

█ We find the evidence sufficient to support these findings and conclusions.

### III.

Appellant claims that the court assigned an incorrect date to his disability, it being appellant's contention that the date of the injury is different from the date of the accident, and the former ought to be the

▮▮▮▮▮▮▮▮▮▮▮

key date for purposes of calculating benefits. The accident in question occurred on September 24, 1978. Appellant first filed a report of injury on June 27, 1979. Appellant claims that the date of injury is August 6, 1981. The trial court entered the following finding of fact:

"14. Claimant is presently and since August 6, 1981, has been suffering from a permanent partial disability of 25 percent of the body as a whole, relating to his back injury of September 24, 1978."

The court entered the following conclusion of law:

"18. Rather, claimant's September 24, 1978, accident has resulted in a 25 percent permanent partial disability as that term is defined in Section 27–12–403(h), Wyoming Statutes 1977, and that this condition has existed since as early as August 6, 1981."

The court's Judgment contained the following language:

"IT IS ORDERED, ADJUDGED, AND DECREED that the claimant be awarded 25 percent permanent partial disability, and judgment in favor of the claimant is hereby entered accordingly."

We cannot ascertain from the record exactly what appellant's complaint is. It appears that the court below determined that the date of the "compensable injury" was August 6, 1981 (see Conclusion of Law No. 18), and that is the date appellant wants.

We dealt with a similar issue in *Baldwin v. Scullion*, 50 Wyo. 508, 62 P.2d 531 (1936). There the issue was on what date the time limitation for filing a claim for relief under worker's compensation began to run. We said that it ran from the date of the "compensable injury."

" * * * It is true that an accident frequently, perhaps usually, at the exact time of its happening, produces a compensable injury, but, as the cases cited above make clear, that is not always so." Id. 62 P.2d at 539.

We went on to say:

" * * * [I]t should become the clear duty of the trier of fact to determine upon proper and due preponderance of evidence the time when the employee actually suffered a compensable injury. * * * " Id. 62 P.2d at 539.

We extended this rule "to include the applicability of compensation statutes at the time of the 'compensable injury' " in *Bemis v. Texaco, Inc.*, Wyo., 401 P.2d 708, 709 (1965).

▮▮▮ It is therefore the duty of the trier of fact to determine when the compensable injury occurred, and therefore ascertain the applicable payment rates from the worker's compensation statutes. It appears from the record that the date assigned was August 6, 1981. We therefore make no sense of appellant's argument.

IV.

Appellant's last issue relates to the award of attorney's fees. Section 27–12–604(c), W.S.1977, reads in pertinent part as follows:

" * * * The district court may appoint an attorney to represent the employee or claimants and shall allow him a reasonable fee for his services at the conclusion of the proceeding. The attorney shall be paid according to the order of the court either by the director or from the amounts awarded to the employee or claimants or from the employer. * * * "

We have said many times that the worker's compensation law is to be liberally construed in favor of the worker. We have also said that this liberal construction should not be extended for the benefit of counsel in providing attorney's fees, unless such allowance can be related directly to the benefit of the worker. *Williams v. Northern Development Company*, Wyo., 425 P.2d 594 (1967).

▮▮▮▮ The award of attorney's fees necessarily carries with it a considerable amount of discretion in the trial court. This discretion is based upon the court's experience and knowledge in that professional field in which it is deemed to have peculiar competence. *Combs v. Walters*, Wyo., 518 P.2d 1254 (1974). Merely be-

cause the trial court does not award the amount of attorney's fees requested by an attorney does not make such amount awarded unreasonable. We see nothing in the record to make us overcome our natural reluctance to overturn the trial court's award of attorney's fees.

Affirmed.