The CITY OF CASPER, Appellant
(Employer/Defendant),

v.

Ralph C. BOWDISH, Appellee
(Employee/Plaintiff).

No. 84–14.

Supreme Court of Wyoming.

Jan. 29, 1986.

James R. Bell, Deputy City Atty., Casper, for appellant.

David A. Drell, Casper, for appellee.

Before THOMAS, C.J., and ROSE,* ROONEY,** BROWN, and CARDINE, JJ.

THOMAS, Chief Justice.

In this case the City of Casper questions the sufficiency of the evidence to support an award of permanent total disability pursuant to the Worker's Compensation Act (§§ 27–12–101, W.S. 1977, et seq.) under the "odd-lot" doctrine. The district court found that Ralph C. Bowdish was permanently incapacitated from performing any work at any gainful occupation for which he was reasonably suited by experience or training. In order to make this finding the district court must have been satisfied that Bowdish had met his burden of proof in demonstrating total permanent disability under the "odd-lot" doctrine thereby shifting to the City of Casper the burden of establishing that light work of a special nature which Bowdish could perform but which is not generally available in fact was available to Bowdish. The City of Casper did not offer any evidence of the availability of light work of a special nature which Bowdish could perform. We agree with

---

\* Retired November 1, 1985.

\*\* Retired November 30, 1985.

the disposition of this case by the district court, and we affirm.

The City of Casper states the issue in the case in this way:

"Did the District Court err in finding Ralph Bowdish permanently incapacitated from performing any work at any gainful occupation for which he is reasonably suited by experience or training, and thereby awarding permanent total disability benefits based upon such finding?"

Bowdish essentially restates the same issue in his Brief of Appellee.

In presenting its argument the stance of the City of Casper is that the evidence before the court was not sufficient to bring Bowdish within the "odd-lot" doctrine under our decisions in *Schepanovich v. United States Steel Corporation*, Wyo., 669 P.2d 522 (1983); *Cardin v. Morrison-Knudsen*, Wyo., 603 P.2d 862 (1979); and *In re Iles*, 56 Wyo. 443, 110 P.2d 826 (1941). The argument of Ralph C. Bowdish is that he did bring himself within that line of authority, and the City of Casper failed to assume the burden of proof then cast upon it by the "odd-lot" doctrine.

Ralph C. Bowdish injured his back in February of 1982 when he slipped on ice and fell while getting out of the cab of a truck. He struck the edge of the cab or the seat with his lower back and in attempting to catch himself caught the door with his right arm, which jerked his upper back. Initial treatment was conservative, and Bowdish actually returned to his employment as an automotive mechanic and welder for the City of Casper, under a release by the treating physician which specified no heavy lifting. In that instance, however, his symptoms reoccurred, and conservative treatment was continued. When he was not working he received temporary total disability benefits under the Wyoming Worker's Compensation Act. At one point in time the City of Casper withdrew its approval of the temporary total disability benefits, but later it changed its position, and the payment of those benefits continued until August of 1983. The City of Casper then filed a petition for modification in which it asserted that Ralph C. Bowdish no longer was entitled to temporary total disability payments and that he should be evaluated as having a permanent partial disability in an amount not to exceed five percent of his total body. The case went to hearing in October of 1983, and following the hearing the district court approved an award of one hundred percent permanent total disability.

The evidence at the hearing consisted of the testimony of Ralph C. Bowdish and the depositions of two orthopedic surgeons. One of the orthopedic surgeons was Bowdish's treating physician, and the other was an examining physician who saw Bowdish at the request of the City of Casper. The orthopedic surgeon who had treated Bowdish testified that he had a herniated disc in his low back, and that conclusion, which was reached by physical examination, had been confirmed with X rays and sophisticated X ray techniques. The treating physician gave his opinion that Bowdish was one hundred percent disabled from doing physical work. He defined that as doing any lifting, pulling, tugging or getting in bizarre or unusual positions. He estimated that if Bowdish were standing straight up without having to bend, lifting more than ten or fifteen pounds would cause him problems. If he had to bend over and lift anything, according to that doctor, he would be very likely to suffer a reoccurrence of the acute phase of his symptoms. That physician also gave his opinion that Bowdish had a thirty percent permanent disability of his body as a whole.

The examining orthopedic surgeon agreed that Bowdish was one hundred percent disabled from being a mechanic. He explained a difference in his evaluation of Bowdish as having a five percent disability of his body as whole from the thirty percent disability of the body as a whole given by the treating orthopedic surgeon on the basis of objective evaluations at the time of his examination. His testimony suggested that the disc condition may have

spontaneously resolved itself by the time of his examination. Even so, he testified that of the functions which a mechanic might perform Bowdish could not do those that would involve vigorous activity, frequent bending over and heavy lifting.

Bowdish testified that he had a twelfth grade education and had been a mechanic for some twenty-seven years. He stated that in his job for the City of Casper he did repair work on engines, transmissions, brakes, suspension, steering, and all types of repair work on trucks and heavy equipment. He also did welding, and that these duties involved a lot of heavy lifting. These functions were similar to the duties involved in his prior jobs. He did testify that he had been a working foreman about seven years during his prior experience and that he also had worked one year as a shop foreman. As a working, supervisory foreman he would assign work to other mechanics and supervise their work as well as doing mechanical work himself. In that capacity he spent about seventy-five to eighty percent of his time working as a mechanic and the balance as a supervisor. When he worked as shop foreman his duties were to talk to customers when they brought a vehicle in, write up work orders, assign mechanics to do the work, supervise the work and do paper work, such as receiving payment, filling out credit card slips and discussing warranties. In that position there was a certain amount of physical labor because he still was expected to assist the working mechanics when they were having any problems. He testified that he had episodes of pain with his back lasting about one or two days but these occurred probably once a month. He testified that he could do no physical bending or labor and that he could not lift anything around the yard or around the house. He said that he could sit comfortably for fifteen or twenty minutes and sometimes as much as a half hour or forty-five minutes. He said he could not stand for more than a half hour or forty-five minutes without discomfort.

In addition Bowdish testified that he had followed up on two job leads suggested to him by the Department of Vocational Rehabilitation. He also said that he went to close to thirty places looking for jobs. Those included about all of the car and truck dealers in Casper and the larger repair shops. He testified that he was told either that there were no openings or that in the instances in which there were openings the employer would not hire him. One employer did have a supervisory job but they wouldn't hire him because of his back. Another firm also told him that they wouldn't hire him because of his back. In other instances no reason was given. He said that in the process he had looked for supervisory work and for bench work where he could deal with small parts or could accomplish any necessary lifting with a hoist at the bench. Bowdish also testified that he had sought reemployment with the City of Casper, but had been turned down because of a heart condition unrelated to the injury involved in this case.

Section 27–12–405(a), W.S.1977, defines permanent total disability:

> "(a) Permanent total disability means the loss of both legs or both arms, total loss of eyesight, paralysis *or other conditions permanently incapacitating the employee from performing any work at any gainful occupation for which he is reasonably suited by experience or training.*" (Emphasis added.)

Recently we held this statutory definition to be compatible with the odd-lot doctrine. *Rose v. Westates Construction Co.,* Wyo., 703 P.2d 1084 (1985). In order to come within the odd-lot doctrine, however, it is the burden of the employee to establish not only that he is no longer capable of working at the job in which he was employed at the time of his injury, but that the degree of obvious physical impairment, coupled with other facts, such as mental capacity, education, training, or age, must prima facie place him in that category. *Rose v. Westates Construction Co.,* supra; *Lebsack v. Town of Torrington,* Wyo., 698 P.2d 1141 (1985); *Schepanovich v. United States Steel Corporation,* supra. Whether

the evidence of the degree of obvious physical impairment coupled with such other facts places an injured employee prima facie in the odd-lot category is a factual determination to be made by the trial court. *Schepanovich v. United States Steel Corporation,* supra. If there is substantial evidence to support the factual determination that the injured workman is within the odd-lot category we will not change that determination on appeal. *Schepanovich v. United States Steel Corporation,* supra, at 669 P.2d 529, and the authorities there cited.

■ In this instance, in addition to the evidence previously discussed, there was evidence that Bowdish had a superior intellectual capacity, but the same observer also noted that Bowdish's main interests would be in the mechanical and technical areas. His twelfth grade education, previous experience or training as a mechanic, and his age of about fifty, were before the court. In addition there was testimony that the Department of Vocational Rehabilitation had concluded that he would not benefit from retraining. From this information the district court was justified in concluding that Bowdish's prospects were substantially limited to mechanical work or general physical labor, both of which were foreclosed by his lower back condition. The effect of this conclusion was that the burden of proof then shifted to the City of Casper to establish that light work of a special nature which Bowdish could perform but which is not generally available was in fact available to him. *Schepanovich v. United States Steel Corporation,* supra; *Cardin v. Morrison-Knudsen,* supra; and *In re Iles,* supra. The City of Casper chose to rest its case without the introduction of evidence other than the deposition of the examining orthopedic surgeon. Obviously this was not sufficient to meet the burden of proof imposed upon an employer according to the authorities cited.

■ In this case the evidence viewed in the light most favorable to Bowdish with the favorable inferences that may be drawn therefrom (*Matter of Haynie,* Wyo.,

592 P.2d 693 (1979); *House v. State ex rel. Worker's Compensation Division,* Wyo., 701 P.2d 1153 (1985); *Shaw v. Lewmont Drilling,* Wyo., 694 P.2d 117 (1985)) supports the trial court in its statement:

"3. That the Court finds that Employee is permanently incapacitated from performing any work in a gainful occupation for which he is reasonably suited by experience or training."

The order premised upon that finding "that the Employee's application for permanent total disability, and the same hereby is approved" is affirmed.