In the Matter of the Worker's Compensation Claim of Jose M. ANAYA, Appellant (Petitioner/Claimant),

v.

HOLLY SUGAR CORPORATION, Appellee (Respondent/Employer),

and

State of Wyoming, ex rel., Wyoming Workers' Safety and Compensation Division, Appellee (Respondent/Objector).

No. 95–277.

Supreme Court of Wyoming.

Dec. 5, 1996.

Rehearing Denied Jan. 6, 1997.

Lowell H. Fitch, Torrington, for Appellant.

Donald I. Schultz of Holland & Hart, Cheyenne, for Appellee Holly Sugar Corp.

William U. Hill, Attorney General; John W. Renneisen, Deputy Attorney General; Gerald W. Laska, Senior Assistant Attorney General; and Jennifer A. Evans, Cheyenne, for Appellee State ex rel. Wyoming Workers' Compensation Division.

Before TAYLOR, C.J.*, THOMAS, MACY and LEHMAN, JJ., and KAIL, District Judge (Retired).

THOMAS, Justice.

The only real issue in this case is whether the record discloses sufficient evidence to sustain the findings of a hearing examiner acting for the Wyoming Workers' Safety and Compensation Division (Division) that Jose M. Anaya (Anaya) should be awarded permanent partial disability benefits of 7% for physical impairment and 20% for vocational loss. Anaya complains of a failure to award

* Chief Justice effective July 1, 1996.

permanent total disability based upon the odd-lot doctrine. He has parsed the case into a number of sub-issues, but all of them fit within the substantial evidence mold. We hold that the decision of the hearing examiner was supported by substantial evidence in the record and must be affirmed.

In his Appellant's Opening Brief, Anaya sets forth seven issues stated as:

1. Is a permanent total disability claimant required to search for suitable work in his community when the search would be objectively futile?

2. If not, was the Hearing Examiner's denial of Claimant's permanent total disability benefits not in accordance with law?

3. Was the finding and conclusion of the Hearing Examiner that there was suitable work available to Claimant in his community not supported by substantial evidence, arbitrary, and not in accordance with law?

4. Was the finding and conclusion that claimant's vocational incapacity is unrelated to his work injury to the extent caused by claimant's severe deconditioning not supported by substantial evidence and not in accordance with law?

5. Were various findings and conclusions disparaging to the Claimant's integrity not supported by substantial evidence, arbitrary, and not in accordance with law, all to great prejudice?

6. Even if this case were fairly one for permanent partial disability, was the hearing examiners determination of 20% for loss of earning capacity rational and in accordance with law?

7. Will a statement by a claimant that he's "retired" and is drawing social security retirement, or that he personally believes the local economy is tough, alter his eligibility for regular permanent disability?

In the Appellee's Brief, Holly Sugar Corporation, the Anaya issues are answered under the following statement of the issues:

A. Did Petitioner fail to meet his burden of proof to show permanent total disability?

B. Is the 7% physical impairment award supported by substantial evidence?

C. Is the 20% vocational loss award supported by substantial evidence?

The Brief of Appellee, filed on behalf of the Division, sets forth only one issue:

Whether the Office of Administrative Hearings' order awarding permanent partial disability benefits was supported by substantial evidence, reasonable and in accordance with law.

Anaya was moving a wheelbarrow loaded with sugar beets, and he slipped and fell backward, landing on his right wrist and hip. At that time, Anaya was sixty-one years old. The orthopedic surgeon who treated Anaya diagnosed a herniated disc at the L4/5 level and also stated that Anaya suffered from spondylolisthesis and severe degenerative joint disease. On June 29, 1990, the treating orthopedist advised the Division that Anaya had obtained maximum medical improvement and should be referred to another orthopedist for a permanent impairment rating. A month later, Anaya's orthopedist advised the Division that Anaya should not return to his former employment with Holly, nor should he engage in any activity that involved heavy lifting, bending, or twisting. Anaya was awarded medical and temporary total disability benefits up until September 18, 1990.

Anaya was referred to a second physician to obtain a physical impairment rating, and, after examining Anaya, the second physician completed a functional capacity evaluation. That physician rated Anaya at a total impairment rating of 7% using the American Medical Association's Guidelines to Impairment (AMA Guidelines). The physician agreed with the treating physician that Anaya would be unable to return to his previous job at Holly, but he could return to light duty.

Anaya objected to the 7% disability rating, and the Division referred him to another orthopedic specialist for a second impairment rating. The third physician utilized the exact range-of-motion findings the second physician had used to calculate the 7% rating, but this physician rated Anaya's physical impairment at 25% of the whole body. This rating later was determined to be invalid under the AMA Guidelines, and Anaya does not dispute the invalidity.

Following the series of examinations, the Division offered Anaya a 25% permanent impairment award less the 7% Anaya previously had received. Anaya rejected the offer and the impairment rating, and the Division referred the case to the Office of Administrative Hearings to resolve the question of Anaya's total or partial disability. Prior to the hearing, Anaya had another functional capacity evaluation which was performed by two vocational rehabilitation specialists.

The hearing was rescheduled several times and ultimately was held on March 21 and 22, 1994, with a concluding session on April 11, 1994. Anaya sought an award of permanent total disability. Evidence presented at the hearing consisted of Anaya's testimony; the testimony of the first specialist to whom Anaya was sent for a physical impairment rating, together with the functional capacity evaluation report of that specialist; the functional capacity evaluation of the two rehabilitation specialists; and two vocational evaluations outlining employment opportunities in Anaya's community.

The hearing examiner denied Anaya's application for total disability benefits. The order that was entered by the hearing examiner awarded Anaya benefits for a 7% physical impairment and a 20% vocational loss of earnings as the result of his injury. Anaya sought judicial review in the district court, and the district court certified the case to this court.

■ Our standard for judicial review of the sufficiency of the evidence relating to administrative agency decisions is well settled. If there is substantial evidence in the record to support the hearing examiner's findings of fact, we uphold those findings. On review, it is Anaya's burden to demonstrate that the findings of fact by the hearing examiner are not supported by substantial evidence. *See Wyoming Steel & Fab, Inc. v. Robles*, 882 P.2d 873 (Wyo.1994); *State ex rel. Wyoming Workers' Compensation Div.*

*v. Brown*, 805 P.2d 830 (Wyo.1991). Our task is to examine the evidence that favors the Division and Holly, the prevailing parties, affording to them all favorable inferences to be drawn from the evidence. We do not consider any conflicting evidence. *Robles.*

The odd-lot doctrine [1] has been a part of our substantive law of workers' compensation since 1941. *In re Iles*, 56 Wyo. 443, 110 P.2d 826 (1941). We consistently have held that the initial burden of producing evidence falls upon the injured workman. *Gilstrap v. State ex rel. Workers' Compensation Div.*, 875 P.2d 1272 (Wyo.1994); *Leonard v. McDonalds of Jackson Hole*, 746 P.2d 1261 (Wyo.1987); *Worker's Compensation Claim of Cannon v. FMC Corp.*, 718 P.2d 879 (Wyo.1986); *City of Casper v. Bowdish*, 713 P.2d 763 (Wyo.1986); *Rose v. Westates Construction Co.*, 703 P.2d 1084 (Wyo.1985); *Lebsack v. Town of Torrington*, 698 P.2d 1141 (Wyo.1985); *Schepanovich v. United States Steel Corp.*, 669 P.2d 522 (Wyo.1983); *Cardin v. Morrison–Knudsen*, 603 P.2d 862 (Wyo.1979). In *Bowdish*, 713 P.2d at 765, we articulated the proposition thusly:

> In order to come within the odd-lot doctrine, however, it is the burden of the employee to establish not only that he is no longer capable of working at the job in which he was employed at the time of his injury, but that the degree of obvious physical impairment, coupled with other facts, such as mental capacity, education, training, or age, must prima facie place him in that category.

This rule has been affirmed and reaffirmed by quotation in *Worker's Compensation Claim of Cannon*, 718 P.2d at 884–85 and *Gilstrap* 875 P.2d at 1274. It is clear from our cases that, in order to meet his burden of producing evidence, Anaya was required to demonstrate he had made reasonable efforts to find work in his community after reaching maximum medical improvement or, alternatively, that he was so completely disabled by his work-related injury that any effort to find

---

**1.** In *Cardin v. Morrison–Knudsen*, 603 P.2d 862 (Wyo.1979), we adopted the description of the "odd-lot doctrine" set forth in 2 Larson, Law of Workmen's Compensation, § 57.51 at p. 10–109 (1976),

as providing that permanent total disability

"may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well known branch of the labor market."

employment would have been futile. *Gilstrap; Worker's Compensation Claim of Cannon; Schepanovich.*

■ In this regard, Anaya testified that he considered himself "retired when his benefits stopped from Workmen's Comp", and if he had looked for work, he would not have been hired because "even the young people don't have employment right now." Testifying through a Spanish-speaking interpreter at the hearing, Anaya was asked:

Q. Isn't it true, you just have not looked for work since your injury, have you?

A. That is the truth.

The record stands that Anaya made no efforts, never mind "reasonable efforts" to find employment after his injury in 1989. Anaya agreed on cross-examination at the hearing, "if someone doesn't look, you can't find [work]." Because Anaya did not look for suitable employment, he failed to shift the burden of proof to Holly that suitable employment was available in the community.

The alternative premise available to Anaya was to establish that he was so totally disabled from the injury that any efforts to find employment would have been futile. In this regard, the evidence demonstrates that Anaya could not return to his former occupation at Holly, but a specialist and a rehabilitation counselor both classified Anaya as having the ability to return to light-duty jobs. The rehabilitation specialist testified that jobs were available, which Anaya could have performed, even given his limitations. That witness stated the available jobs "all met either a light- or sedentary-job classification * * *." They were "unskilled" positions, which "did not require English-speaking abilities to a major degree." During the hearing, the witness engaged in this dialogue with counsel for Holly:

Q Based upon your investigation, do you have an opinion whether suitable employment was regularly and continuously available for Mr. Anaya in the Torrington area?

ANAYA'S COUNSEL: Objection. No foundation.

HEARING EXAMINER: Overruled.

A I have an opinion.

Q (By Holly's Counsel) And what is that opinion?

A **I believe there is employment that is compatible that has been regularly and continuously available to him in the Torrington area.**

(Emphasis added.) The rehabilitation specialist specifically stated that jobs continuously were available in the Torrington area for parts assemblers, sorters, and stocking clerks, which did not involve any heavy lifting and met the light-duty classification. The witness further testified employers were willing to make reasonable accommodations for employees with back pain, allowing periodic breaks and a change in positions from sitting to standing and vice versa, all within the context of the Americans With Disabilities Act [Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101–12213 (1990 & Supp. III 1991)].

The vocational assessment accomplished for Anaya listed occupations he was qualified to perform that encompassed only sedentary to light physical duties. Anaya's subjective determination that he was too disabled to work or that a job search would have been futile on his part is not adequate to sustain his burden of producing evidence under the odd-lot doctrine. *Gilstrap; Schepanovich.* Instead, this evidence demonstrated that a job search in Torrington likely would have been successful. The conclusion is that Anaya was not entitled to an award of permanent total disability benefits under the odd-lot doctrine because of his failure to go forward with the evidence. The record supports the decision of the hearing examiner on this aspect of the case.

■ Anaya also seeks review of the permanent partial impairment rating adjudicated by the hearing examiner of 7% plus 20% of loss of earning capacity. Two orthopedic specialists arrived at identical conclusions regarding Anaya's ranges of motion upon examination. While the second specialist found Anaya to be 25% physically impaired based upon those limitations, his conclusion was not compatible with the AMA Guidelines.[2] Had

2. The AMA Guidelines essentially state, that if    there is more than a 10% difference between a

the second specialist followed the guidelines, his impairment rating would have been the same 7% rating reported by the first specialist.

The record also demonstrates that Anaya suffered from physical deconditioning between 1990 and 1993, the period between the initial and the last physical evaluation. The physician who arrived at the 7% impairment figure testified:

> The issue is that the man [Anaya] is deconditioned since he has pain. And if he were to get into condition, he—and get into shape, he wouldn't have the pain.

> \* \* \* \* \* \*

> And if he continues to remain out of shape, he will continue to have pain. But in that case, **it's not an occupational disorder.**

(Emphasis added.) Even if one were to conclude that Anaya's deconditioning was a product of the original injury in 1989, restoring his physical condition would leave his permanent physical impairment at 7%. The deconditioning exacerbates Anaya's disability, but the injury itself produced impairment of only 7%. Anaya offered nothing to refute this conclusion at the hearing. Anaya did not meet his burden by establishing on the record that he suffered more than the 7% disability rating, and the determination of the physical impairment rating by the hearing examiner is supported by substantial evidence.

The personnel manager for Holly testified that Anaya was earning $7.22 an hour prior to the 1989 injury. The available jobs, identified by the vocational assessment as ones Anaya could perform given his disability, would have paid an average salary of $5.03 an hour. The comparison of these two figures results in a conclusion that there was a 20% reduction in Anaya's earning capacity. The record sustains the conclusion that, if Anaya had made the effort to maintain his

physical condition, the $5.03 figure is the hourly rate that Anaya could earn should he decide to seek employment. The hearing examiner's decision on the 20% loss of earnings factor is supported by substantial evidence on the record and must be affirmed.

We do not read the record as Anaya's counsel does with respect to any disparagement of Anaya's integrity. The findings of the hearing examiner were based on the physical evaluations made by the specialists and are supported by the record. Further, we do not discern any evidence of prejudice resulting from Anaya's statement that he was retired and drawing social security benefits.

The hearing examiner's Findings and Conclusions are affirmed in all respects.

---

patient's tighest straight-leg raising in his standing versus his prone position, then those figures are discounted in the impairment rating for the low back. Anaya's percentages were more than 10% as evidenced in the record by the first specialist:

> And in Anaya's case, he has a difference of range of motion. I'll give you the numbers

here. He had had straight-leg raising of 80 and 90 degrees. Yet, in the standing position, he had range of motion of flexion of 30 degrees and extension of 10 degrees. So he got 40 degrees, versus 80 or 90 degrees. That's greater than 10 percent.