652 P.2d 1214

Charles CANDELARIA,
Plaintiff-Appellee-Cross-Appellant,

v.

HISE CONSTRUCTION and American
States Insurance Company, Defend-
ants-Appellants-Cross-Appellees.

No. 5080.

Court of Appeals of New Mexico.

Dec. 1, 1981.

David Duhigg, Duhigg & Cronin, Albuquerque, Bruce Moore, Santa Fe, for plaintiff-appellee-cross-appellant.

Deborah S. Davis, Shaffer, Butt, Thornton & Baehr, P.C., Albuquerque, for defendants-appellants-cross-appellees.

## OPINION

SUTIN, Judge.

This is a workmen's compensation case in which plaintiff injured his right little finger. Instead of an award under § 52–1–43, N.M.S.A. 1978, the scheduled injury section, the trial court awarded plaintiff compensation benefits based upon a finding that plaintiff was 50%· permanently, partially disabled. Defendants appealed from this judgment. Plaintiff cross-appealed on the ground that the scheduled injury section was unconstitutional because it denied workmen the equal protection of the law. We reverse the judgment. The cross-appeal is without merit.

The pertinent findings of the trial court are:

On or about August 21, 1979, plaintiff, who is right handed, sustained an accidental injury to his right finger. He completed the eighth grade. Testing indicated that his intellectual functions were at the third grade level. Plaintiff had worked as an airport porter, dishwasher, janitor, general clean-up worker, grounds keeper, carwash attendant, cement mixer/plasterer and laborer. His usual job is a laborer. "As a result of the injury plaintiff was not able to do work similar to that which he has done in the past. Functions requiring lifting, carrying, gripping, bending and strength manipulation of tools impair the use of his right hand in work which he was able to perform prior to the injury." [Emphasis added.] Plaintiff's use of his right hand is limited to short periods of time. Any appreciable exertion causes pain to other parts of his body, thereby affecting his body efficiency as a whole. "The injury to plaintiff's right little finger, including its sensitivity to cold, has resulted in a distinct and separate impairment to the body as a whole. * * * As a result of the injury plaintiff has a 50% permanent partial disability as of January 28, 1980 to the body as a whole." [Emphasis added.]

Apart from the findings, the record shows that from August 21, 1979, the date of the injury, to January 28, 1980, 5 months later, plaintiff was totally disabled and was fully paid compensation during that period of time. Commencing January 28, 1980, plaintiff was 50% permanently, partially disabled.

Defendants claim that plaintiff is limited to the benefits set forth in the scheduled injury section.

If we construe the court's findings correctly, plaintiff escaped the scheduled injury section because the injury to the little finger impaired the use of his right hand; that the use of the right hand caused pain to spread to other parts of the body, resulting in a distinct and separate impairment to the body as a whole. Therefore, the injury to the little finger resulted in disability.

A sense of uncertainty exists as to the meaning of the scheduled injury section and its relationship to a total or partial disability award. A conflict of opinion exists in this Court. Unless a definite rule is established, trial courts and lawyers will be led astray.

Before we review the evidence, we must first determine the meaning of the scheduled injury section and its application to this case. Section 52–1–43(A) reads in pertinent part:

*For disability* resulting from an accidental injury to specific body members including the loss or loss of use thereof, the workman shall receive the weekly maximum and minimum compensation for disability as provided in Section 52–1–41 NMSA 1978 * * *. [Emphasis added.]

Section 52–1–41 provides for the amount of compensation benefits to be paid for "total disability." We are only concerned with the meaning of "For disability."

*Am. Tank & Steel Corp. v. Thompson,* 90 N.M. 513, 565 P.2d 1030 (1977) deleted the words "For disability" and substituted therefore, "For physical impairment." It said:

If one suffers a scheduled injury which causes a physical impairment but does not create disability * * * [§ 52–1–43] *supra,* will apply. When the impairment amounts to a disability * * * [§ 52–1–41, total disability] and * * * [§ 52–1–42, partial disability] *supra,* are properly invoked.

*The trial court in the present case found that the injury and physical impairment were limited to plaintiff's right hand. No other part of plaintiff's body was physically impaired.* The trial court also found *total disability* as a result of plaintiff's injuries and his subsequent inability to perform the only work for which he was qualified. [Emphasis added.] [Id. 515.]

The judgment of the trial court was affirmed.

■ In other words, "physical impairment" alone subjects a workman to the scheduled injury section. When "physical impairment" is such that it leads to total or partial disability as defined by law, the workman escapes the scheduled injury section. "Physical impairment" does not automatically equate with "disability." *Anaya v. New Mexico Steel Erectors, Inc.,* 94 N.M. 370, 610 P.2d 1199 (1980). It denotes a defect or infirmity limiting or making useless a member or limb of the body. *Perez v. Intern. Minerals & Chemical Corp.,* 95 N.M. 628, 624 P.2d 1025 (Ct.App.1981). *Perez* explained *American Tank.*

■ By deleting "for disability" and substituting "for physical impairment," the scheduled injury section reaches this rationale. A workman is physically impaired, not functionally disabled, if a workman is able to perform all of his usual tasks despite the loss or loss of use of a specific body member. The workman shall receive limited compensation benefits under the scheduled injury section in addition to the compensation earned while doing his work.

■ On the other hand, if the loss or loss of use of a specific body member creates a condition whereby a workman is wholly or partially unable to perform the usual tasks in the work he was doing at the time of the accidental injury, and is wholly and partially unable to perform the work for which he is fitted, the scheduled injury section is not applicable. The workman is totally or partially disabled as defined in §§ 52–1–24 and 52–1–25 and is entitled to compensation as set forth in §§ 52–1–41 and 52–1–42.

In other words, we are not concerned with the type of physical injury suffered by a workman. We are concerned with his capacity to work.

*American Tank* specifically overruled the previous decisions of the Supreme Court that were in conflict with this newly created rule. One of the cases overruled was *Montoya v. Sanchez,* 79 N.M. 564, 446 P.2d 212 (1968). *Montoya* states the rule as follows:

[T]he scheduled injury section is exclusive unless there is evidence of *separate and distinct impairment* to other parts of the body *in addition to the disability resulting from the injury to a scheduled member.* [Emphasis added.] [Id. 565, 446 P.2d 212.]

The use of the words "disability" and "impairment" were reversed in order in *American Tank.* It eliminated the phrase "evidence of separate and distinct impairment to the other parts of the body." It substituted therefore, "but does not create disability."

Nevertheless, *Newhoff v. Good Housekeeping, Inc.,* 94 N.M. 621, 614 P.2d 33

(Ct.App.1980) followed *Montoya.* In *Newhoff,* the workman lost total sight in his right eye. "The parties * * * stipulated that plaintiff has a *45 percent permanent partial disability* as a result of the accident in which he was blinded in one eye and that plaintiff's 'sole physical injury' as a result of that accident was confined to the eye." [Emphasis added.] [Id. 622, 614 P.2d 33.] Even though the parties agreed that plaintiff was "disabled," *Newhoff* held that he was subject to the scheduled injury section because there was no "separate and distinct *impairment* to other parts of the body in addition to the *disability* resulting from injury to a scheduled member." [Emphasis added.] [Id. 623, 614 P.2d 33.] *Newhoff* is hereby overruled.

■ In the instant case, to subject plaintiff to the scheduled injury section, the evidence must show as a matter of law that, despite the injury to plaintiff's little right finger, plaintiff was able to perform all of the usual tasks of his employment.

On August 21, 1979, plaintiff, 26 years of age, with an eighth grade education, was employed by defendant to set up the scaffold, mix cement and assist in doing the plaster work. He was making a batch of stucco. One of the bags broke in half. In trying to push the bag into the cement mixer, his fourth finger on his right hand was caught in the mixer. Plaintiff suffered an open fracture of the distal end at the D.I.P. joint, the last joint of the little finger, and also suffered a masceration of the digital nerve. A partial amputation of the distal end was performed. On October 8, 1979, the orthopedic surgeon recommended that plaintiff return to work because plaintiff was physically capable of working. Plaintiff returned to work. His work required him to use his right hand. Every time he bumped his little finger, it split open and hurt a lot. There was no way he could avoid bumping his finger to stop it from splitting open and hurting. However, when asked the number of times he bumped his finger after he last saw his doctor in November, 1979, he answered "a couple of times." The record does not show whether he bumped his finger prior thereto, and, if we assume he did, the number of times.

On November 1, 1979, the surgeon examined plaintiff and found that the little finger was healed but it had a variant deformity, i.e., "a turning in of the finger and a formal fusion was probably necessary." On November 9, 1979, a fusion was performed. During the winter of 1979 and early 1980, plaintiff suffered a "cold intolerance." His little finger got very cold. It made his hand hurt from the little finger up to the wrist. He was less able to tolerate this condition and do things in cold weather. On January 24, 1980, the surgeon found that the fusion was not solid. Plaintiff was given a finger splint and was told to return to work. The second time he returned to work, he worked about a week and returned to his doctor. Apparently, he never returned to work thereafter.

Some ten months later, two weeks before trial, plaintiff was again examined by the surgeon. The examination showed that plaintiff also suffered pain on the dorsum, the upper surface of the right hand, which pain interfered with plaintiff's use of the little finger and right hand. X-rays were taken and showed a non-union of the two bones that had been fused. The fusion was not solid. The surgeon believed that a refusion or amputation should be performed. No further surgery was done. If an amputation was performed, plaintiff would suffer loss of 45% of the finger, i.e., 2% of the hand and 1% of the total man and the upper extremity. Absent amputation, plaintiff has 30% impairment of his little finger, with a 5% extra impairment due to the fact that plaintiff lost his radial bundel of his digital nerve, or 35% impairment which is 2% impairment of the hand, 2% impairment of the upper extremity and a 1% impairment of the whole man.

With reference to plaintiff's pain generally, the surgeon testified that pain could not be gauged objectively; that plaintiff was best able to determine the levels of pain he could withstand; that due to "cold intolerance, plaintiff would be more likely to experience pain or discomfort in cold weather than warm; that this pain would interfere with the use of his little finger and right hand; that this pain would limit his ability

to do functional things, like grip tools or use a shovel, lifting and carrying.

For over a year following the fracture and masceration of plaintiff's little finger on the right hand, the fusion was not solid; that plaintiff needed a re-fusion or amputation of the distal end of the finger. Plaintiff's hand was impaired. In addition, plaintiff's pain can be classified as an injury. *Herndon v. Albuquerque Public Schools,* 92 N.M. 635, 593 P.2d 470 (Ct.App. 1978). This pain would limit plaintiff's ability to do functional things such as the type of labor involved in his employment. His capacity to work had been limited. He was partially disabled. Plaintiff tried to do his work on two occasions but was unable to do so. We conclude that plaintiff was not subject to the scheduled injury section.

■ However, the court did not find that plaintiff was partially disabled as defined in § 52–1–25. To be partially disabled, the court must find that plaintiff "is unable to some percentage-extent to perform the usual tasks in the work he was performing at the time of his injury and is unable to some percentage-extent to perform any work for which he is fitted * * *." *Medina v. Zia Co.,* 88 N.M. 615, 544 P.2d 1180 (Ct.App. 1975); *Pacheco v. Springer Corporation,* 83 N.M. 622, 495 P.2d 800 (Ct.App.1972). For method of proof, see, *Gearhart v. Edison Metal Products,* 92 N.M. 763, 595 P.2d 401 (Ct.App.1979), Sutin, J., concurring in result; *Marez v. Kerr-McGee Nuclear Corp.,* 93 N.M. 9, 595 P.2d 1204, 597 P.2d 1178 (Ct.App.1978), Sutin, J., specially concurring.

■ The trial court found that "as a result of the injury plaintiff was not able to do work similar to that which he has done in the past." This finding is insufficient to establish partial disability. Due to the uncertainty of the law on the meaning of the scheduled injury section and defendants' proper reliance on an erroneous interpretation thereof, and the failure of the trial court to make essential findings on partial disability, defendants are entitled to a new trial limited solely to whether plaintiff was partially disabled as defined by law. A hearing shall be held, evidence shall be presented and findings made on whether plaintiff was unable to some percentage-extent to perform the usual tasks in the work he was performing at the time of the injury and is unable to some percentage-extent to perform any work for which he is fitted by age, education, training, general physical and mental capacity and previous work experience.

We turn to plaintiff's cross-appeal. *First,* plaintiff claims that § 52–1–43(A), supra, denies workmen whose injuries are listed therein the equal protection of the law. We do not find it necessary to consider this interesting constitutional question. This question becomes operable when a workman is subject to the scheduled injury section.

■ *Second,* plaintiff contends that he is entitled to unlimited vocational rehabilitation benefits. The trial court found that plaintiff was entitled to vocational rehabilitation and ordered that defendant shall pay plaintiff's rehabilitation expenses in accordance with the Workmen's Compensation Act.

Section 52–1–50, before its amendment in 1981, provided that such additional compensation for vocational rehabilitation services shall not exceed $1,000.00. In 1981 it was increased to $3,000.00. Laws 1981, ch. 353, § 1. In *Ruiz v. City of Albuquerque,* 91 N.M. 526, 531, 577 P.2d 424 (Ct.App.1978), we said:

> If there is sufficient evidence to warrant vocational rehabilitation, the court must award an employee $1,000.00 for this purpose.

Plaintiff relies upon previous language of this section which provides that the court in its discretion may award additional compensation as it deems necessary "for his board, lodging, travel and other expenses and for the maintenance of his family during the period of rehabilitation." This language is followed by: "however, such additional compensation shall not exceed one thousand dollars ($1,000)." To read this language to mean that a workman is entitled to unlimited vocational rehabilitation benefits is to stand the English language on its head. There is no merit to plaintiff's contention.

768

There is no merit to plaintiff's cross-appeal.

Plaintiff's judgment below is reversed and remanded to the district court to vacate and set aside its judgment, hold a hearing on the issue of partial disability as heretofore stated, make findings of fact and enter judgment. The assessment of costs in this appeal will await the determination of the issue below.

No attorney fees are allowed plaintiff for services rendered in this appeal.

IT IS SO ORDERED.

LOPEZ and DONNELLY, JJ., concur.