In the Matter of the Protest Upon the Worker's Compensation Claim of Kenneth C. ROSE, Appellant (Employee-Claimant),

v.

**WESTATES CONSTRUCTION CO.,**
Appellee (Employer).

No. 83–211.

Supreme Court of Wyoming.

July 30, 1985.

K. Craig Williams of Williams, Kelly & Waldrip, Rawlins, for appellant.

Catherine L. MacPherson of Johnson, MacPherson & Noecker, Rawlins, for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

THOMAS, Chief Justice.

The primary issue presented in this case is whether the district court properly applied the "odd-lot doctrine" under the Wyoming worker's compensation statute in de-

nying a claim for permanent total disability. There is a corollary question with respect to the sufficiency of the evidence to sustain the district court's award of a permanent partial disability of twenty percent. We affirm the award entered by the district court.

The appellant, Kenneth C. Rose, states the issues to be dealt with as follows:

"I.

"AS A MATTER OF LAW, THE APPELLANT IS NOT PRECLUDED FROM RECEIVING ONE HUNDRED PERCENT PERMANENT DISABILITY BY EMPLOYMENT AVAILABLE TO HIM IN THE COUNTY OF HIS RESIDENCE FOR WHICH HE WAS NOT QUALIFIED BY EXPERIENCE OR TRAINING.

"II.

"ON THE FACTS OF THE PRESENT CASE, THE DISTRICT COURT'S DECISION DENYING ONE HUNDRED PERCENT TOTAL DISABILITY IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE EVEN ASIDE FROM THE FACT THAT IT IS BASED UPON A REPORT BASED UPON LEGALLY IRRELEVANT PREMISES.

"A. REVEREND LUNDGREN'S REPORT, AS AMPLIFIED BY MARIE HILL'S TESTIMONY, SHOWS AN INABILITY BY MR. ROSE TO HOLD GAINFUL EMPLOYMENT.

"B. MR. ROSE'S HORSE RAISING PARTNERSHIP DOES NOT DISQUALIFY HIM FROM RECEIVING ONE HUNDRED PERCENT PERMANENT DISABILITY.

"III.

"THE DISTRICT COURT FAILED TO PROPERLY CONSIDER AND EVALUATE ALL RELEVANT FACTORS IN DETERMINING THE EXTENT OF DISABILITY."

The appellee, Westates Construction Company, has agreed with the statement of the issues made by the appellant.

Kenneth C. Rose injured his back while working as a laborer on a dam construction project. He slipped and fell while carrying a heavy cement form. An orthopedic surgeon who examined him two days later diagnosed a severe lumbosacral spine sprain superimposed on first degree spondylolisthesis of L–5 on S–1. He was treated by being placed in traction, and a body cast was applied. Rose applied for and received temporary total disability benefits arising out of this injury, and Westates Construction acquiesced in the temporary total disability benefits.

Some six months later Rose was re-examined by the treating orthopedic surgeon. In a letter to the clerk of the district court that physician stated, among other things:

" * * * At the present time, I feel that he is one hundred percent disabled from doing the work, which he was doing at the time of the injury of driving heavy equipment. * * * "

Following this examination Rose filed a claim for permanent total disability benefits, and Westates Construction Company contested that claim.

At the request of Westates Construction Company, Stress Management and Biofeedback Institute of Wyoming conducted an examination of Rose which included an examination by another orthopedic surgeon. At the hearing of this case testimony was received from Rose and from the manager of the Carbon County Job Service Office. In addition, three exhibits were admitted into evidence by stipulation. These consisted of a copy of the letter from appellant's orthopedic surgeon, a portion of which is quoted above; the report from the Stress Management and Biofeedback Institute of Wyoming; and a portion of a document entitled Manual for Orthopedic Surgeons in Evaluating Permanent Physical Impairment. Included in the report from the Stress Management and Biofeedback Institute was a letter from the orthopedic surgeon who examined the appellant as a part of the Institute's examination. That orthopedic surgeon concurred in the prior diagnosis of appellant's condition, and the letter report further stated:

"This man is effectively prevented from returning to the type of work that he was doing at the time of injury, and I doubt that it will improve, that is, I feel this injury is permanent.

"According to the Manual for Orthopedic Surgeons in Evaluating Permanent Physical Impairment, this injury would carry a 20 per cent whole body permanent physical impairment. I feel effectively, however, that the patient is 100 per cent functionally impaired."

In the report from the Stress Management and Biofeedback Institute of Wyoming there also was included a document entitled "McCarron-Dial Work Evaluation" prepared by a certified occupational evaluator using a system described as a neuropsychological approach to vocational and work evaluation. There was attached to that evaluation a listing of potential job placements statistically derived from the results of testing which theoretically the person evaluated could perform within one year, given his limitations and proper training. There were fifty-five occupational titles generated pursuant to this evaluation.

The manager of the Carbon County Job Service office testified that of the fifty-five potential occupational titles twenty-two were available in Carbon County, although she had no current vacancies. In addition she testified that her testimony did not take into consideration any physical limitations of the appellant.

Rose testified that he had attended school through the eighth grade, and he then joined the Army in 1946. While serving in the Army he received training in heavy equipment operation, and also earned a General Education Diploma. After leaving military service he worked as an ambulance driver, and then as a laborer in a mine. He then was hired as a police officer, and held that job for eighteen years. In 1974 he retired to become a horse rancher but within a few months he

returned to police work, accepting a job as Chief of Police in Shelburn, Indiana. He then accepted a similar position in Medicine Bow, Wyoming, and after leaving that position he worked as a heavy equipment operator, first for a coal mine, and subsequently for various construction companies until he was injured. Rose also testified that he suffered constant lower back pain and required medication because of his injury. He was required to refrain from any stooping, bending or heavy lifting, and could not sit or stand for any lengthy period of time. In addition, he said in his testimony that he had invested in a quarter-horse-raising partnership, which he helped to supervise in January of 1983. Upon cross-examination he admitted that his experience with the Police Department of the City and County of Denver had included work in a supervisory capacity. He further testified that he had not looked for work since he was injured.

In comments from the bench following closing statements by counsel at the hearing, the district judge stated that it was clear that Rose suffered from a permanent disability and that he was one hundred percent disabled from doing the work he was doing at the time of the injury, which was the functional impairment described by the second orthopedic surgeon. The court went on to find that there were other available occupations which Rose was capable of engaging in, and simply because they were not currently available on the job market that did not result in his being one hundred percent permanently disabled. The district judge indicated that his personal feeling was that there might be more than a twenty percent permanent partial disability but something less than one hundred percent. He said, however, that the evidence available in the case would only justify twenty percent. The district judge also commented on the fact that Mr. Rose's participation in the partnershp for raising quarter-horses was compatible with his managerial and supervisory skills as a police officer, a sergeant supervising individuals in the Denver Police Department.

The order reducing the court's oral comments to documentary form was entered on August 26, 1983, and the district judge formally held that the claim for permanent total disability was denied and awarded Rose benefits for a twenty percent permanent partial disability pursuant to the provisions of § 27–12–403(h), W.S.1977. Following the entry of that order Rose filed a motion for a new trial and to modify the award. Upon the denial of that motion an appeal was taken which designated the order initially entered and the order denying the motion for new trial and for modification of an award as the orders which are appealed.

Permanent total disability currently is defined in § 27–12–405(a), W.S.1977, as follows:

> "(a) Permanent total disability means the loss of both legs or both arms, total loss of eyesight, paralysis or *other conditions permanently incapacitating the employee from performing any work at any gainful occupation for which he is reasonably suited by experience or training.*" (Emphasis added.)

This statutory definition is compatible with the odd-lot doctrine which this court first recognized in *In re Iles,* 56 Wyo. 443, 110 P.2d 826 (1941). Rose's claim for permanent total disability is premised upon this "odd-lot doctrine." He contends that the injury to his back has permanently incapacitated him from performing any work in any gainful occupation for which he is reasonably suited by experience or training.

Under our law the burden of proof is upon the injured workman initially to establish that he is incapacitated "from performing any work at any gainful occupation for which he is reasonably suited by experience or training." If he demonstrates that he is so disabled that the services which he is reasonably equipped to perform by his experience and training are not marketable in a well-known branch of the labor market in the community so as to provide a steady and continuous source of income rather than sporadic or intermittent employment, the burden of proof then is

shifted to the employer to demonstrate that light work of a special nature which the injured employee could perform but which is not generally available is in fact available to him. *Schepanovich v. United States Steel Corporation,* Wyo., 669 P.2d 522 (1983).

The employee's burden of proof is not met by his establishing that he is no longer capable of working at the job in which he was employed at the time of his injury. In order to shift the burden to the employer the evidence of the degree of obvious physical impairment coupled with other facts, such as mental capacity, education, training, or age, must prima facie place the injured employee in the odd-lot category, and in that situation the employer cannot rely upon any presumption of light work being available. But in *Schepanovich v. United States Steel Corporation,* supra, this court also noted that a corollary of the general purpose principle must be that if the medical impairment is so limited or specialized in nature that the employee is not obviously unemployable or relegated to the odd-lot category, it is not unreasonable to require him to meet a burden of proof with respect to establishing unavailability of work to a person in his circumstances. We there held, following other jurisdictions, that in order to sustain that burden of proof the employee must show reasonable efforts have been made to obtain suitable employment. In this instance the appellant testified that he had not attempted to work or to look for any work since his injury, and under the circumstances of this case he did not shift the burden of proof to the employer. *Schepanovich v. United States Steel Corporation,* supra.

While it is unnecessary under the circumstances to consider whether the burden of proof which might be imposed upon the employer was met, we would be remiss if we did not comment upon the evidence here encompassed in the McCarron-Dial Work Evaluation reflecting potential job placements which the injured person theoretically could perform within a year, given his limitations and proper training. Our statutory definition with respect to the odd-lot doctrine is limited to those gainful occupations for which the employee is reasonably suited by experience or training at the time of the injury, and does not encompass any obligation on the part of the injured employee to enter into any training program in order to improve his chances of employment. In addition to objecting to this report, Rose asserts that the trial court should not have relied upon his participation in the partnership for raising horses in reaching its determination. We do not perceive the record as manifesting a reliance upon any income from that venture as having any impact upon Rose's disability. Obviously that would be improper. *In re Iles,* supra; *Chatfield v. Industrial Accident Board,* 140 Mont. 516, 374 P.2d 226 (1962); 2 Larson, Workmen's Compensation Law, § 57.51, p. 10–164.64 (1983). In this instance, however, the district court simply concluded that the participation in the horse-raising partnership corroborated the supervisory skills which the district judge had found that Rose had acquired as a product of his police experience.

As we have noted, the district judge then awarded a twenty percent permanent partial disability pursuant to § 27–12–403(h), W.S.1977, which provides:

"(h) For any other injury known to surgery or medicine to constitute permanent partial disability, the employee shall receive compensation in the amount proportional to the extent of permanent partial disability based as near as may be upon the foregoing schedule. One (1) factor to be considered is the ability of the employee to continue to perform work for which he was reasonably suited by experience or training prior to the injury."

The burden of proof is, of course, upon Rose. *Jones v. Jesse's Disposal Service,* Wyo., 702 P.2d 1299 (1985).

Like the district court, we are somewhat dissatisfied with the nature of the proof relating to permanent partial disability in this instance. Some of the circumstances might well lead to a conclusion that a high-

er level of disability is present in Rose's case. The district judge, however, pointed to the only evidence on which he could make a determination of disability as the twenty percent whole body permanent physical impairment level established pursuant to the Manual for Orthopedic Surgeons in Evaluating Permanent Physical Impairment referred to in the letter from the second orthopedic surgeon who had examined Rose.

We previously have held that a district judge may consider other factors reflected in the evidence beyond the physician's rating of disability in order to arrive at a finding of permanent partial disability. *McCarty v. Bear Creek Uranium Co.,* Wyo., 694 P.2d 93 (1985); *State ex rel. Wyoming Worker's Compensation Division v. Colvin,* Wyo., 681 P.2d 269 (1984). We also recently have held that a determination of the degree of permanent partial disability is a question of fact to be resolved by the trier of fact. *Abas v. State of Wyoming, ex rel. Wyoming Worker's Compensation Division,* Wyo., 701 P.2d 1153 (1985); *Pacific Power and Light v. Parsons,* Wyo., 692 P.2d 226 (1984).

■ In this instance the only other evidence of disability was that related by Rose himself with respect to limitations of function, and it is the task of the trial court to weigh and evaluate that evidence along with the other evidence in the record. Furthermore, Rose's testimony was consistent with his medical diagnosis and treatment and not in conflict with the evaluation by the doctors.

■ We conclude that Rose was not successful in bringing himself within the odd-lot doctrine of permanent total disability in accordance with our statute and precedents. We do not find any prejudicial error in the consideration of his activities in his horse-racing partnership by the district judge. Finally, the evidence does support the finding of a permanent partial disability of twenty percent.

While, as we have indicated, we are in accord with the sense of dissatisfaction rel-

ative to the proof of disability which the district judge felt, we conclude that there is nothing which would justify this court in holding that the award was not proper, and the judgment of the district court is affirmed.