In the Matter of the WORKER'S COMPENSATION CLAIM OF John C. CANNON, Appellant (Employee-Claimant),

v.

FMC CORPORATION, Appellee (Employer-Respondent).

No. 84–273.

Supreme Court of Wyoming.

April 29, 1986.

K. Craig Williams, Rawlins, for appellant.

Gary M. Greenhalgh of Greenhalgh, Bussart, West & Rossetti, Rock Springs, and Terry J. Harris, Asst. Atty. Gen., Cheyenne, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Justice.

This is an appeal from the district court's denial of a permanent total disability claim. John Cannon, appellant, applied for a modification of his permanent partial disability award of two and one-half percent, claiming that he had become totally disabled. The district court modified the award, finding that appellant suffered a thirty percent disability.

We will affirm.

In December, 1979, while employed as a janitor by appellee, FMC Corporation, appellant injured his back when he leaned over to pick up some paper. He continued working and reinjured his back in March, 1980. After this reinjury appellant underwent back surgery and returned to his janitorial job. In September, 1983, appellant left his job claiming his back pain was unbearable.

Appellant was awarded permanent partial disability benefits of two and one-half percent on March 2, 1983. After he left his job in September, 1983, appellant submitted a claim for permanent total disability, based upon a letter from his treating physician, Dr. Chris Jabour. Appellee contested this claim and a hearing was held in July, 1984.

Before the hearing, appellant, at the request of the state's Worker's Compensation Division, was examined by a panel of three doctors: Dr. Meade O. Davis, an orthopedic surgeon, Dr. Stephen H. Martin, a neurosurgeon, and Dr. Pat Fleming, a psychologist. Depositions from these three

doctors were introduced in evidence at the hearing. In addition, appellant and Mrs. Eunice Kiernan, manager of the local Job Service Center, testified at the hearing.

Appellant testified as to the cause of his injury and the resulting pain. He also established his educational background and past work experience. He had attended school through the eighth grade and later received the equivalent of a high school diploma. Appellant's work history was extensive, including: delivery person, paratrooper and medical aide in the military service, carpenter, forklift operator, truck driver, construction worker, police officer and janitor. There were a number of other jobs, all of which involved to some extent, manual labor.

Evidence concerning the general availability of jobs in the area was provided by Mrs. Kiernan. She identified a number of available jobs for which appellant met the required educational and experience standards. Counsel for appellee asked Mrs. Kiernan whether there was a suitable job available for a person "who had a lift/push limitation of twenty to thirty pounds, and also was restricted from sitting or standing in one position for more than sixty minutes, or was limited from two hours of driving * * *." Mrs. Kiernan's response was: "Well, given his desire to work or her desire to work, yes, I think there would be work." Mrs. Kiernan later admitted, however, that appellant never applied to the Job Service; thus, his physical limitations were not known to her, so she could not definitely state whether he could hold any of the available jobs.

Medical evaluations concerning appellant's injury were provided by a letter from Dr. Jabour. In his letter, Dr. Jabour stated that he had earlier provided a partial disability figure of seven percent and that this figure was purely a physical impairment figure found in an orthopedic surgeon's manual which is used in evaluating permanent physical impairment. He went on to state his opinion that appellant "is totally disabled with regards to future manual work."

Other medical evidence was provided by the depositions of Drs. Davis, Martin and Fleming. Dr. Davis stated that appellant had a physical impairment of fifty percent; Dr. Martin stated that there was a thirty percent impairment; and Dr. Fleming tested appellant's mental capacity and concluded that appellant had good, average intelligence, and such capacity would enable him to compete with the average person.

From the above evidence the trial court held that appellant had a permanent partial disability of thirty percent. In his opinion letter the trial court stated that three physicians testified appellant could hold a job despite his disability; yet appellant made no attempt to seek employment although there were several job openings which fit appellant's capabilities. This led the court to conclude appellant was not "too eager" to get a job. In addition, the court specifically noted that testimony disclosed appellant's "degree of disability" had increased "from a maximum of 7% to a figure from 30% up to 50%."

Appellant brings this appeal from the order granting thirty percent permanent partial disability and denying permanent total disability. Three issues are presented according to appellant.

"I

"Did the district court err by failing to take into consideration in its determination of disability the inability of the employee-claimant to continue to perform work for which he was reasonably suited by experience or training prior to the injury?

"II

"On the evidence before the district court, was the employee-claimant entitled to permanent total disability under the odd-lot doctrine set forth by this court in *Schepanovich v. United States Steel*, [Wyo.], 669 P.2d 622 [522 (1983) ]?

"III

"Does the odd-lot doctrine continue to have validity in the State of Wyoming after the 1975 amendment to Wyoming Statute § 27–12–405(a)?"

Appellee restates the issues in an argumentative fashion but appears to agree with appellant's statement.

I

We are concerned, primarily, with two statutes. Section 27–12–403, W.S.1977 (June 1983 Replacement), concerns permanent partial disability. It provides in part:

"(a) Permanent partial disability means the loss or permanent impairment of a limb or sense, or any other injury known to surgery or medicine to constitute permanent impairment of a bodily function."

After dealing with partial disability for the loss of various body parts not relevant here, the statute provides in subsection (h):

"(h) For any other injury known to surgery or medicine to constitute permanent partial disability, the employee shall receive compensation in the amount proportional to the extent of permanent partial disability based as near as may be upon the foregoing schedule. One (1) factor to be considered is the ability of the employee to continue to perform work for which he was reasonably suited by experience or training prior to the injury."

The other relevant statute for our purposes is § 27–12–405(a), W.S.1977, which is set out in Part II of this opinion.

■ Our standard of review is well settled. "[Q]uestions regarding the extent and duration of a claimant's disability are questions of fact to be determined by the trial court and shall be reviewed as such. * * * " *Matter of Abas*, Wyo., 701 P.2d 1153, 1156 (1985). We review the evidence in the light most favorable to the trial court's findings, and when there is substantial evidence to support the facts found by the court, its order will not be disturbed. *Pacific Power and Light v. Parsons*, Wyo., 692 P.2d 226 (1984). In making the factual determination of the extent of the claim-

ant's injury, the trial court is not bound by medical testimony; nonmedical witnesses and other evidence may be relied on. *McCarty v. Bear Creek Uranium Company*, Wyo., 694 P.2d 93 (1985).

■ Appellant maintains that there is no substantial evidence to support the trial court's finding. He contends § 27–12–403(h) requires that the trial court consider his ability to continue to perform work for which he was reasonably suited by experience or training prior to his injury, but that the court failed to consider this factor. In support of this contention appellant states that Doctors Jabour, Martin and Davis gave "physical impairment" figures of seven, thirty, and fifty percent respectively, and although at times they labeled these percentages as disability figures, the percentages referred only to physical impairment and not disability. According to appellant, there was no discrepancy in the amount of disability determined by the doctors when they took into consideration the statutory vocational factor. Appellee claims "[a]ll of the doctors agree that Mr. Cannon cannot return to the type of work for which he is qualified by virtue of his training and experience." Yet, appellant claims the trial court based its perception of the doctors' opinions on their incorrect use of the term "disability" when they had meant "physical impairments." This resulted in the erroneous conclusion of thirty percent disability in appellant's view.

Initially, we do not agree that the doctors were uniform in their rating of appellant's disability. Nor are we convinced that the trial court failed to consider the vocational factor stated in § 27–12–403(h). Instead, we think it is clear from the court's opinion letter that the thirty percent award was arrived at by considering the physical impairment figures along with the evidence provided by the depositions of Doctors Martin, Davis and Fleming and the testimony of Mrs. Kiernan, and concerned appellant's ability to obtain work for which he was reasonably suited.

Dr. Jabour unequivocally stated, in a letter to the clerk of the district court, that

appellant was completely disabled with regard to future manual work because of the persistence and severity of his back pain. However, this opinion is accompanied by a seven percent physical impairment figure taken from an orthopedic surgeon's manual used to evaluate such impairments. In addition, Dr. Jabour's opinion as to appellant's "disability" is found in a letter written in response to a request from appellant's counsel asking Dr. Jabour to clarify that the seven percent figure was in fact a physical impairment figure. The trial court may have found the statements as to disability made by the deposed doctors more credible.

Dr. Davis could not say whether appellant could perform the functions of a custodian. He explained that while appellant might not be able to do all of the tasks one envisions the typical janitor performing, there could be light janitorial jobs, such as cleaning windows and pick-up work, which appellant was capable of doing. In addition, Dr. Davis believed appellant could possibly perform the job of a dispatcher for a police department. In a letter to the Worker's Compensation Division Dr. Davis stated that appellant has a "50 percent permanent partial disability of the body," and in his deposition stated that this was a physical impairment figure.

Dr. Martin refused to assign a disability figure to appellant although he assigned an impairment figure of thirty percent. He recognized a distinction between *physical impairment* and *disability* but stated that he would use the two synonymously.[1] Dr. Martin was not familiar with appellant's employment background. He did state, however, that a person with appellant's injury could not do manual labor, but could hold the jobs of a radio dispatcher, salesperson, or clerk.

We cannot reconcile the above statements with appellant's claim that the doctors all agreed appellant was totally disabled from doing the work for which he was reasonably suited by experience or training. Nor can we accept appellant's claim that the trial court failed to consider his ability to perform work for which he was reasonably suited by experience or training. Appellant claims that the trial court based its finding of disability solely on the doctor's physical impairment figures. He reaches this conclusion from the trial court's reference, in its opinion letter, to the physical impairment figures as "degree of disability" and from the fact that the award equals the physical impairment level given by Dr. Martin.

In our review, however, we are not concerned with possible erroneous approaches the trial court might have taken in arriving at its conclusion. Rather, we review the evidence in the light most favorable to the trial court's finding to determine whether it is supported by substantial evidence. See *Yates v. Yates*, Wyo., 702 P.2d 1252 (1985); *Lebsack v. Town of Torrington*, Wyo., 698 P.2d 1141 (1985); *Scott v. Fagan*, Wyo., 684 P.2d 805 (1984).

We have set forth the evidence in the case above. From this the trial court reached its determination. Although appellant claims the court failed to consider the factor stated in § 27–12–403(h), its opinion letter specifically stated: "Factually, three physicians have testified that Mr. Cannon could hold a regular job, despite his present disability." The trial court also noted that Mrs. Kiernan testified that there were several job openings which fit Mr. Cannon. These statements indicate that the court did consider appellant's ability to perform work for which he was reasonably suited.

Appellant argues strenuously that this court's decision in *State ex rel. Wyoming*

---

1. *Physical impairment* is used to denote a defect or infirmity limiting or making useless a member or limb of the body. See, e.g., *Candelaria v. Hise Construction*, 98 N.M. 763, 652 P.2d 1214 (1981), while the *disability* concept is a blend of two ingredients: "The first ingredient is disability in the medical or physical sense, as evidenced by obvious loss of members or by medical testimony that the claimant simply cannot make the necessary muscular movements and exertions; the second ingredient is *de facto* inability to earn wages * * *." 2 Larson's Worker's Compensation § 57.51, pp. 10–6 to 10–7 (1983).

*Worker's Compensation Division v. Colvin,* Wyo., 681 P.2d 269 (1984) compels our finding that the trial court's award cannot be supported by the evidence. In Colvin, this court upheld a finding that the partial disability of the claimant was fifty percent loss of the right arm above the elbow, even though the medical testimony assigned a thirty-four percent loss of function. In affirming the trial court's finding we stated that § 27–12–403(h) allowed the court to consider the work for which the claimant was suited before the injury and how he was impaired in performing that work after the injury when determining the compensation a claimant should receive. Colvin does not stand for the proposition that the trial court may consider only the claimant's decreased ability to perform the work he held before the injury. Rather, it is the claimant's ability to continue to perform work for which he is *reasonably suited,* which is *one factor* to be considered.

*Rose v. Westates Construction Company,* Wyo., 703 P.2d 1084 (1985), is on point. There, the claimant also had an eighth grade education with a General Education Diploma, and had worked as a police officer and manual laborer throughout his career. Because of a lower back injury he could not sit or stand for any lengthy period of time and had to refrain from bending or heavy lifting. Doctors assigned the claimant a physical impairment of twenty percent, but stated that he was "effectively prevented from returning to the type of work that he was doing at the time of the injury" and that he was 100 percent functionally impaired. This court upheld the trial court's award of twenty percent permanent disability despite the worker's contention that the award was not supported by substantial evidence. We upheld the determination in Rose, as we do here, because § 27–12–403(h) states that "the ability of the worker to continue to perform work for which he is suited" is only one factor to be considered; and because the determination of partial disability is a question of fact for the trier of fact, who is not bound by the loss assigned by the physician. *State ex rel. Wyoming Worker's Compensation Division*

*v. Colvin,* supra; and *McCarty v. Bear Creek Uranium Company,* supra.

Given the evidence of potential jobs appellant could perform and the physical impairment rates of seven, thirty and fifty percent, the trial court's determination of thirty percent permanent disability is supported by substantial evidence.

II

■ Appellant next contends that the evidence established that he was entitled to permanent total disability under the odd-lot doctrine.

Section 27–12–405(a) provides for permanent total disability awards. It states:

"Permanent disability means the loss of both legs or both arms, total loss of eyesight, paralysis or other conditions permanently incapacitating the employee from performing any work at any gainful occupation for which he is reasonably suited by experience or training."

In *Rose v. Westates Construction Company,* supra, 703 P.2d at 1087, we noted that "[t]his statutory definition is compatible with the odd-lot doctrine which this court first recognized in *In re Iles,* 56 Wyo. 443, 110 P.2d 826 (1941). * * *" Under the odd-lot doctrine, total disability may be found in workers who, although not altogether incapacitated, are so handicapped that they will not be employed regularly in any well-known branch of the labor market. 2 Larson's Worker's Compensation § 57.51 p. 10–164.49 (1983).

In *Schepanovich v. United States Steel Corporation,* Wyo., 669 P.2d 522, 528 (1983), this court held that the

"burden of proof initially is assigned to the injured worker who is seeking to qualify as permanently totally disabled under the 'odd-lot doctrine' to demonstrate that he is incapacitated 'from performing any work at any gainful occupation for which he is reasonably suited by experience or training.' * * *"

More recently we have said that in order to come within the odd-lot doctrine,

"it is the burden of the employee to establish not only that he is no longer capable of working at the job in which he was employed at the time of his injury, but that the degree of obvious physical impairment, coupled with other facts, such as mental capacity, education, training, or age, must prima facie place him in that category." *City of Casper v. Bowdish*, Wyo., 713 P.2d 763 (1986).

Professor Larson notes that if the worker has the burden to establish unavailability of work to a person in his circumstance, this normally would require a showing that he made reasonable efforts to secure suitable employment. 2 Larson's Worker's Compensation Law § 57.61 p. 10–164.114 (1983).

Appellant contends he demonstrated that he is incapacitated from performing any work at any gainful occupation for which he is reasonably suited by experience and training. He claims that his testimony concerning his pain and evidence of his numerous medical bills established that looking for employment would have been futile. This, he contends, qualifies as an exception to the normally required showing of reasonable efforts to secure suitable employment.

First we note the applicable standard of review.

"Whether the evidence of the degree of obvious physical impairment coupled with such other facts [mental capacity, education, training and age] places an injured employee prima facie in the odd-lot category is a factual determination to be made by the trial court." *City of Casper v. Bowdish*, supra.

If there is substantial evidence to support that factual determination we will not change such determination on appeal.

The depositions from Dr. Martin and Dr. Davis establish, at most, that appellant could not perform the manual labor required in his current job and many others. Yet, as noted earlier, Dr. Martin stated that a person with appellant's injuries could hold a number of jobs, and Dr. Davis stated that appellant could perform light janitorial

work and possibly the job of a dispatcher. Although it might be said that appellant showed that he could not continue his current employment, he was also required to show there was no other available employment for which he was suited by experience or training. As the district court in the *Schepanovich* case noted, we must look at all of the skills one accumulates when considering jobs for which the worker is reasonably suited by experience and training. See also, *Rose v. Westates Construction Company*, supra. Certainly appellant cannot claim to be unsuited for light janitorial work. His past experience as a police officer would seem to qualify him for more sedentary jobs with a police force. He is fifty-two years of age. He has the equivalent of a high school diploma and a vast amount of work experience. Although he suffers a painful injury which limits the time he can stand or sit without moving, as well as the amount he can lift, we cannot say that the trial court's factual determination is not supported by substantial evidence.

■ We note that although appellant had the burden of establishing the unavailability of employment, a burden which normally requires reasonable efforts to secure suitable employment, he admits that he did not seek employment from anyone other than appellee between the time he left his job until the hearing. He argues, however, that because he believed his injury and the accompanying pain would make his search futile, the normal requirement is not applicable. Appellant's prediction of futility is not enough to relieve him of the burden of showing reasonable efforts to secure employment. In fact appellant's prediction apparently was wrong since the evidence showed that there were a number of available jobs that one with appellant's injury quite possibly could hold.

We find no error in the trial court's conclusion that appellant did not establish he was entitled to permanent total disability under the odd-lot doctrine.

## III

Perhaps recognizing the futility of his second argument, appellant argues that this court should eliminate the odd-lot doctrine from the worker's compensation laws of this state. He points to the fact that this court adopted the doctrine in *In re Iles*, supra, decided in 1941, and that in 1975 the legislature changed the language of the pertinent statute so that the doctrine is no longer applicable. Appellant makes this claim despite our application of the doctrine to numerous cases decided after the statutory amendment. See e.g., *Schepanovich v. United States Steel Corporation*, supra; *Cardin v. Morrison-Knudsen*, Wyo., 603 P.2d 862 (1979).

Basically, appellant's argument is that the statute spoke of "permanently incapacitating the workman from performing any work at any gainful occupation" when the *Iles* case was decided. See § 124–120(b), Wyo.Rev.Stat. (1931). The legislature has since added the phrase "for which he is reasonably suited by experience or training" after the word "occupation." Because of this change, appellant contends the clear language of the statute is violated if an employer is allowed to defeat a claim for total disability by showing that there is light work available to the claimant for which he is not reasonably suited by experience and training. Appellant's claim, however, was not defeated by appellee's showing of any light work available; rather appellee showed available work for which appellant was reasonably suited.

After the briefs had been submitted in this case we further clarified the odd-lot doctrine as it applies in this state. In *Rose v. Westates Construction Company*, supra, 703 P.2d at 1088 we said:

> " * * * Our statutory definition with respect to the odd-lot doctrine is limited to those gainful occupations for which the employee is reasonably suited by experience or training at the time of the injury * * *."

So defined, it is clear that the relevant jobs are those for which the worker is reasonably suited at the time of injury. If the burden is shifted, the employer must show that light work of a special nature which the injured worker could perform but which is not generally available is in fact available to him. The words "could perform" encompass the restriction that the worker can perform, given his experience and training at the time of the injury. This is consistent with the language of § 27–12–405(a).

The odd-lot doctrine as applied by this court is consistent with § 27–12–405(a). There is substantial evidence to support the trial court's conclusion that appellant did not establish that he was incapacitated from performing any work at any gainful occupation for which he is reasonably suited by experience or training. Finally, there was substantial evidence to support the trial court's determination that appellant suffers a thirty percent permanent disability.

Affirmed.