875 P.2d 1272 (1994)
In the Matter of the Worker's Compensation Claim Of Deborah K. GILSTRAP, Appellant (Employee-Claimant),
v.
STATE of Wyoming ex rel. WYOMING WORKERS' COMPENSATION DIVISION, Appellee (Respondent-Objector).
No. 93-221.
Supreme Court of Wyoming.
June 15, 1994.
Donald L. Painter, Casper, for appellant.
Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Kenneth E. Spurrier, Asst. Atty. Gen., and Courtney R. Kepler, Sp. Asst. Atty. Gen., for appellee.
*1273 Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.
MACY, Chief Justice.
Appellant Deborah K. Gilstrap appeals from the district court's order which affirmed the hearing examiner's decision to deny her claim for permanent-total-disability benefits or an increase in her permanent-partial-disability award.
We affirm.
Ms. Gilstrap presents the following issue for our review:
1. Whether Employee-Claimant is entitled to any additional award for permanent partial physical impairment for loss of earning capacity in this case.
Ms. Gilstrap was employed as a waitress at Benham's Inc., a restaurant located in Casper. In March of 1990, she injured her back while she was lifting a loaded food service tray. Ms. Gilstrap received a permanent-partial-disability award which was given on the basis of a twenty-one-percent-whole-body-physical-impairment rating.
Subsequently, she applied for permanent-total-disability benefits or an additional award of permanent-partial-disability benefits. She contended that she was entitled to receive an additional award because she had lost her earning capacity as a result of her work-related injury.
The Workers' Compensation Division denied Ms. Gilstrap's application, and Ms. Gilstrap objected to that decision. After holding a contested case hearing, the hearing examiner denied Ms. Gilstrap's claims. The hearing examiner issued the following conclusions of law:
1. The burden of proving entitlement to benefits is upon the Employee-Claimant who must prove her case by a preponderance of the evidence.
2. Employee-Claimant has not met her burden in showing that she is permanently totally disabled. The medical and clinical reports are substantial evidence that there is an occupation for continuous employment available to the Employee-Claimant at this time, at a wage equal to or greater than what she received before the injury.
3. The Employee-Claimant has not met her burden of proof in showing that her permanent partial disability exceeds the 21% physical impairment award she has already received.
After the district court affirmed the hearing examiner's decision, Ms. Gilstrap appealed to this Court.
The standard which we use to review agency actions is articulated in WYO.STAT. § 16-3-114(c) (1990). See also W.R.A.P. 12.09. "`The extent and degree of disability are questions of fact.'" Leonard v. McDonalds of Jackson Hole, 746 P.2d 1261, 1262 (Wyo. 1987) (quoting State ex rel. Worker's Compensation Division v. Lewis, 739 P.2d 1225, 1226 (Wyo.1987)). See also Sims v. State ex rel. Wyoming Workers' Compensation Division, 872 P.2d 555, 556 (Wyo.1994). The claimant has the burden of proving each essential element of her claim by a preponderance of the evidence. Leonard, 746 P.2d at 1263 (citing Potter v. RMT Properties, Inc., 715 P.2d 214 (Wyo.1986)).
Pursuant to § 16-3-114(c)(ii)(E), we review questions of fact under the substantial evidence standard:
"Our task is to examine the entire record to determine if substantial evidence exists to support the hearing examiner's findings. We will not substitute our judgment for that of the hearing examiner if his decision is supported by substantial evidence. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions."

Romero v. Davy McKee Corporation, 854 P.2d 59, 61 (Wyo.1993) (citing Farman v. State ex rel. Wyoming Workers' Compensation Division, 841 P.2d 99, 102 (Wyo. 1992)).
Bearden v. State ex rel. Wyoming Workers' Compensation Division, 868 P.2d 268, 269 (Wyo.1994).
Ms. Gilstrap contends that she was entitled to receive an award for permanent total disability because she was permanently incapacitated and could not work as a result of her work-related injury. Specifically, she *1274 claims that she was entitled to receive permanent-total-disability benefits because her situation fell within the odd lot doctrine.
(xvi) "Permanent total disability" means the loss of both legs or both arms, total loss of eyesight, paralysis or other conditions permanently incapacitating the employee from performing work at any gainful occupation for which [s]he is reasonably suited by experience or training[.]
WYO.STAT. § 27-14-102(a)(xvi) (Supp.1993) (emphasis added). The statutory definition for permanent total disability is consistent with the odd lot doctrine. City of Casper v. Bowdish, 713 P.2d 763, 765 (Wyo.1986). The odd lot doctrine provides: "[P]ermanent total disability `may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well known branch of the labor market.'" Cardin v. Morrison-Knudsen, 603 P.2d 862, 863-64 (Wyo.1979).
[I]n order to come within the odd-lot doctrine,
"it is the burden of the employee to establish not only that [s]he is no longer capable of working at the job in which [s]he was employed at the time of h[er] injury, but that the degree of obvious physical impairment, coupled with other facts, such as mental capacity, education, training, or age, must prima facie place h[er] in that category." City of Casper v. Bowdish, Wyo., 713 P.2d 763 (1986).
Worker's Compensation Claim of Cannon v. FMC Corporation, 718 P.2d 879, 884-85 (Wyo.1986). To satisfy this burden, a claimant normally must make "a showing that [s]he made reasonable efforts to secure suitable employment." 718 P.2d at 885. The worker may also satisfy her burden by showing that she "was so disabled by virtue of [her] injuries that any [efforts to secure employment] would have been futile." Schepanovich v. United States Steel Corporation, 669 P.2d 522, 529 (Wyo.1983).
If the employee meets her burden, the burden of proof shifts to the employer to demonstrate that "light work of a special nature which the employee could perform but which is not generally available in fact is available to the employee." 669 P.2d at 528. The hearing examiner ruled that Ms. Gilstrap's situation did not come within the odd lot doctrine because Ms. Gilstrap failed to meet her initial burden of proof. We agree.
Evidence was presented which indicated that Ms. Gilstrap probably could not return to her former occupation as a waitress because she was physically limited in the amount of weight she could lift and the amount of time which she could spend standing. However, the record also showed that jobs were available which Ms. Gilstrap could perform on a continuous basis in spite of her physical limitations. Her vocational assessment listed five occupations which had only sedentary to light physical requirements. Ms. Gilstrap was generally qualified for these occupations, and she could earn wages in these occupations equal to or greater than she could earn in her previous position. A Job Service employee testified that positions in each of those occupations were available in Casper.
Ms. Gilstrap did not attempt to secure any employment after she was injured. She contends that such a search would have been futile. A worker's subjective determination that she could not work or that a job search would be futile is not sufficient to meet her burden of proof. 669 P.2d at 529. The evidence described above indicated that Ms. Gilstrap's job search probably would not have been futile. FMC Corporation, 718 P.2d at 885.
Ms. Gilstrap was not entitled to receive permanent-total-disability benefits because she failed to meet her initial burden of proving that she qualified for benefits under the odd lot doctrine. Substantial evidence supported the hearing examiner's decision.
Ms. Gilstrap also sought an award of permanent-partial-disability benefits in excess of the award which she had previously received. The hearing examiner denied her claim because he found that she had failed to prove that she suffered from a disability greater than the twenty-one percent rating she had been given.
*1275 WYO.STAT. § 27-14-405(b)(xvi) (1991) provides the source for a permanent-partial-disability award for a loss of earning capacity:
(b) For any permanent partial disability described in this section, the employee shall receive for the number of months indicated a monthly payment as provided by W.S. XX-XX-XXX(c), less any previous awards for the same body part:
.....
(xvi) Any other injury resulting in permanent and complete loss of use and not enumerated in this subsection shall be rated as an impairment of the body as a whole. One (1) factor to be considered is the ability of the employee to continue to perform work for which [s]he was reasonably suited by experience or training prior to the injury. . . . not more than 60 months[.]
In State ex rel. Wyoming Worker's Compensation Division v. White, 837 P.2d 1095, 1097 (Wyo.1992), we stated:
Impairment of earning capacity is determined by taking into consideration the following factors:
(a) Physical impairmentthe nature and extent of injury.
(b) The worker's age.
(c) The worker's education.
(d) Ability to continue pre-injury employment.
(e) Post-injury employment prospects.
(f) Pre-injury earnings.
(g) Post-injury earnings.
No single factor of those listed above is determinative of the extent or existence of loss of earning capacity. They are all evidence to be considered together with all of the other facts and circumstances in determining whether a loss of earning capacity in fact occurred and, if so, the percentage of loss.
See also McCarty v. Bear Creek Uranium Company, 694 P.2d 93 (Wyo.1985). The hearing examiner considered the evidence offered on each factor in reaching his conclusion that Ms. Gilstrap had not met her burden of proving by a preponderance of the evidence that she suffered from a disability greater than the twenty-one percent rating which had been awarded to her.
No new medical evidence was offered to show that Ms. Gilstrap's physical state was any different from what it had been when the initial award was made. Ms. Gilstrap was thirty-eight years old at the time of the hearing. She had a high school education and had attended a beauty school program. The hearing examiner found that Ms. Gilstrap could not resume her pre-injury employment as a waitress. Ms. Gilstrap's own testimony, the vocational assessment, and the testimony of a vocational rehabilitation counselor supported the hearing examiner's conclusion. Ms. Gilstrap's pre-injury earnings were approximately $580 per month, including tips.
With regard to Ms. Gilstrap's post-injury employment prospects, the hearing examiner relied upon the expert testimony given by a doctor and the functional capacity evaluation prepared by a physical therapist which suggested that Ms. Gilstrap had not put forth a full effort in the tests which were conducted during her physical examinations. He also considered the vocational assessment and the testimony of the Job Service employee which indicated that work was available in Casper which Ms. Gilstrap could perform on a continuous basis for wages which were equal to or greater than her pre-injury wages. The hearing examiner emphasized the clinical psychologist's report which indicated that Ms. Gilstrap's subjective belief that she could not work was responsible for her inability to work. The hearing examiner found:
[M]y finding with regard to the post-injury employment prospects, as I stated before, was that they look poor; but I'm finding that it's because of her belief that she is unemployable; and that if that attitude could change, you know, based on the testimony of [the Job Service employee] and the [vocational assessment], along with the report of [the physical therapist] and [the doctor], I find that there should be some type of job out there that this person is reasonably suit[ed] for.
Because Ms. Gilstrap had not worked since she was injured in March 1990, she had no post-injury earnings.
*1276 We have reviewed the record and hold that substantial evidence supported the hearing examiner's conclusion: "[T]aking all of these factors together, in terms of trying to determine a loss of earnings capacity, I can'tI don't think that [Ms. Gilstrap] has met the burden of proving any loss of earnings capacity in excess of the amount of the award that she has already received."
Affirmed.